GALLANT v. MILES.

1. APPEAL AND ERROR—TRIAL—EVIDENCE—ADMISSIBILITY—SAVING QUESTION FOR REVIEW.

The rejection in the court below of testimony of plaintiff's misconduct, offered in support of defendants' theory that plaintiff voluntarily surrendered possession of the premises, in an action for damages for unlawful eviction, cannot be objected to for the first time in this court on the ground that such testimony was admissible in mitigation of damages.

2. TRIAL—ARGUMENT OF COUNSEL—CURING ERROR.

Improper argument of counsel as to amount of damages to be obtained in order to avoid payment of costs, was not reversible error where the court promptly instructed the jury not to consider the costs or who was going to pay them, and later covered the same question in his general charge.

3. FORCIBLE ENTRY AND DETAINER—LANDLORD AND TENANT—STATUTES—TERMINATION OF TENANCY.

A landlord who obtained entry by means of fraud, and was followed by officers, who, by false representations as to the writ of restitution, and with a display of force calculated to intimidate and terrify, but without actual violence, took plaintiff's goods from the premises, was liable for damages for forcible entry under section 13229, 3 Comp. Laws 1915, although the tenancy had been terminated by proper notice.

4. APPEAL AND ERROR—DIRECTED VERDICT.

Where the court below would have been justified in directing a verdict for plaintiff, there was no error of which defendant could complain in submitting the question to the jury.

Error to Lenawee; Gilday, J., presiding. Submitted January 18, 1918. (Docket No. 128.) Decided March 27, 1918.

Case by Leon Gallant against Otis M. Miles and another for an unlawful eviction from leased property.

Judgment for plaintiff. Defendants bring error. Affirmed.

*Tripp & Burleigh* and *J. N. Sampson,* for appellants.

*B. D. Chandler,* for appellee.

KUHN, J. The plaintiff leased from the defendants certain rooms in an apartment building in the city of Hudson, owned by them. There is some dispute between the parties as to what the exact agreement was at the time the apartment was leased. The arrangements were verbal and made by Mrs. Mary A. Miles and Mrs. Helen Gallant, the wife of plaintiff. The plaintiff claims that at the time the agreement was made, they were to give her, in addition to the rooms that were rented, certain lots or garden spots for the raising of garden vegetables. This is denied by the defendants, and it is claimed that this arrangement with reference to the garden was not made until later, that no additional compensation was paid for the use of the garden, and that on the part of Mrs. Miles it was a gift, without consideration, and had no relation to the leasing of the apartment. The rent was to be $1.75 a week. It is admitted by both parties that the tenancy was terminated on July 22d by a notice, served upon the plaintiff, to quit and surrender up possession of the premises "for nonpayment of rent and improper conduct, within seven days from the date hereof," as stated in said notice. Some time later, July 25th, it is claimed by the defendants, plaintiff paid to one of the defendants the usual weekly rent for the week ending July 22d. About the same time the defendants caused to be served upon the plaintiff an ordinary summons in assumpsit, issued out of the justice's court, the date of return being left blank. On the return day, as shown by the original summons, defendant Mary A. Miles appeared in the justice's court and

proceedings were had which resulted in the issuing of a writ of restitution by the justice of the peace, which was, some time later, placed in the hands of A. W. Cooper, a deputy sheriff. On the 31st day of July following, the defendants employed Mr. Cooper to move the plaintiff out of the premises in question. He in turn employed Mr. John Roney, the city marshal, and also a Mr. McQueen and a Mr. Edwards, and these, together with the defendants, went to the premises in question while the plaintiff was away at his work. Mrs. Miles was the first to go into the house, and she went in and told Mrs. Gallant that she had come over to see what was the matter with the water pipes, and soon thereafter the two officers and Mr. Miles came in, and Mr. Cooper told Mrs. Gallant they had come to set her out, and also told her that he was a deputy sheriff and that he had a writ of restitution, and they then proceeded to pack up the plaintiff's goods and put them on a dray. Plaintiff's wife requested the officers to wait until the plaintiff came back, until she could telephone him, but the deputy sheriff informed her that he would not do that, and while they were packing the goods, she telephoned her husband, who immediately came home, and when he arrived there, found everything belonging to them out on the dray, and the deputy sheriff informed him that he had a writ of restitution and told him the effect of the writ and that he and the others were there for the purpose of putting him out. The officer asked where he should take the goods, and after some verbal altercation, it was determined to take the goods to the home of plaintiff's father. The plaintiff unlocked the coal house doors so that the officer and his assistants could get the coal and place it on the dray, and it is claimed by the wife of the plaintiff that she attempted to go back into the house after the goods were moved out and that the deputy sheriff took her by the arm and put her out.

The plaintiff brought this action to recover damages, and, upon the trial, was limited in his recovery to damages for humiliation, shame and disgrace and the inconvenience he was put to by being dispossessed of the premises. The trial resulted in a verdict for the plaintiff of $164.50 damages.

It was conceded by counsel for defendants upon the trial that the proceedings had in the justice's court, in pursuance of the summons issued, were irregular, and that the writ of restitution issued was void, and they claim no rights under that proceeding. It seems further to be admitted by both parties that the tenancy had been terminated, and the question seems to be whether the defendants were endeavoring to take peaceful possession of the premises, or was their conduct a violation of the statute prohibiting forcible entries and detainers, being section 13229, 3 Comp. Laws 1915, which reads as follows:

"No person shall make any entry into lands, tenements or other possessions, but in cases where entry is given by law; and, in such cases, he shall not enter with force, but only in a peaceable manner."

Eleven assignments of error are relied upon for the reversal of the judgment. The seventh assignment of error relates to the contention of defendants' counsel that the court erred in refusing to admit evidence of plaintiff's improper conduct both before and after the termination of his tenancy. When this testimony was offered, it was stated by counsel that the purpose of offering it was to determine the question as to the correctness of plaintiff's or defendants' theory, viz., as to whether the premises were surrendered voluntarily by the plaintiff, as claimed by the defendants, or were obtained by force, as claimed by the plaintiff. It is now urged in the brief for the defendants that this testimony should have been received in mitigation of damages, for if this testimony had been admitted, the

jury would have been able to see that the plaintiffs were not the kind and character of people to suffer humiliation and shame on account of being moved out of a house in the presence of immediate neighbors. We do not think that counsel is in a position to argue this question. The objection that these questions went to the measure of damages was not specifically called to the attention of the trial court, and we have held that before the question can be raised on appeal, the ground of objection must be specifically stated. See *Philip* v. *Heraty*, 135 Mich. 446, 456, in which decision many cases are cited.

2. It is also urged that the court erred in not declaring a mistrial on account of the argument of counsel for plaintiff, stating to the jury "that they must have more than $100 damages, for in case they did not get that much, costs would be charged against him and that he would obtain nothing." When this argument was made and objection taken, the court immediately stated that the jury should not consider the argument and were not to take into consideration the costs or who was going to pay them. Again in his general charge he covered the same question and advised the jury that they had nothing whatever to do with the question of costs. We have often held that under these circumstances improper argument does not constitute ground for reversal. See *Reese* v. *Railway*, 159 Mich. 605; *Merrill* v. *Tinkler*, 160 Mich. 580; *Wheeler* v. *Jenison*, 120 Mich. 428; *Pruner* v. *Railway*, 173 Mich. 152; *Devich* v. *Dick*, 177 Mich. 177; *Eberts* v. *Sugar Co.*, 182 Mich. 473; also *Goldman* v. *Railway*, *post*, 543.

3. The remaining assignments of error relate to the charge of the court. It is stated in the brief for the defendants that the question involved in this case is, "the right of a landlord to enter upon his premises and put out of possession one who holds them unlaw-

fully and without right;" it being conceded that the
tenancy had been terminated by proper notice. It is
the contention of the plaintiff that the entry and
possession obtained by the defendant Mary A. Miles
was obtained by stratagem and fraud and was not a
peaceful entry within the meaning of the law. It is
his claim that after such entry was obtained by strata-
gem, the officers followed and by false representation
as to the writ of restitution made to both his wife and
himself, took the goods from the premises and notified
him that unless he provided a place for his goods, they
would be dumped into the street; that under such cir-
cumstances, plaintiff's direction to take the goods to
the home of his father can not be said to have been a
voluntary surrender of the premises. We think that
the law with reference to this situation is fairly settled
by the decision of this court in *McIntyre* v. *Murphy,*
153 Mich. 342, a case similar in many respects to the
one now before us. No actual violence was used in
that case, and there, as here, there was merely the dis-
play of force. A verdict for the plaintiff was directed,
and was sustained by this court. Justice CARPENTER,
in writing the opinion, reviews the statute here in
question and the authorities, and it seems unnecessary
to again go over the legal questions involved. The court
concluded that while it did not appear that actual
violence was used towards the inmates of the house,
there was a display of force calculated to intimidate
and terrify them, and that, under the authorities dis-
cussed in the opinion, the entry was forcible and con-
trary to the statute. The court there sustained the
direction of a verdict for the plaintiff, but we are of
the opinion that it clearly was not error to submit the
questions in the instant case to the jury, and are of the
opinion that the court might properly, under the facts
and circumstances of this case, and under the au-
thority of the *McIntyre Case, supra,* have directed a

verdict for the plaintiff as to the liability of the defendants. That being true, there could be no error in submitting the question to the jury, and the jury was warranted in awarding damages for injuries done to the plaintiff in the course of the eviction.

We have been unable to find any prejudicial error in this record, and therefore affirm the judgment.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, and STONE, JJ., concurred. FELLOWS, J., did not sit.