ANNA MAIO, Landlord, *v.* JOSEPH BORRELLI, Tenant.

City Court of Mount Vernon, October 2, 1948.

*Frank E. Behrman* for landlord.

*John W. Guzzetta* for tenant.

KRAUSS, J. This is a summary proceeding for dispossess. The landlord herein acquired title by purchase within the last few months. The respondent has been in possession for approximately six years, under an arrangement with a prior owner. According to his testimony, his occupancy grew out of his employment as superintendent of the apartment house wherein the premises occupied by him are located. The then owner offered him an apartment, other than that now occupied by him, and a monthly stipend. The apartment in question was vacant at the time, and he expressed a preference therefor. The then owner advised him that this apartment had a greater

value than the one offered him; and that if he occupied same, his additional monthly stipend would be reduced. Upon this arrangement, the superintendent accepted the employment. The conclusion is inescapable that the occupancy of the apartment by the superintendent was an incident of his employment. It is not apparent that the owner would have entered into a tenancy arrangement with the superintendent covering said apartment, had he not accepted the employment. Nor is there any evidence of any express agreement creating a tenancy.

Under these circumstances, the conventional relationship of landlord and tenant does not exist. (1 McAdam on Landlord and Tenant, p. 152; Civ. Prac. Act, § 1410; *Weisberg* v. *Cohen,* 129 App. Div. 496; *Shufelt* v. *Boyles,* 88 Misc. 133; *Kerrains* v. *People,* 60 N. Y. 221; *Chirico* v. *Kings Co. Sav. Bank,* 168 Misc. 207.) The question turns upon the nature of the holding, whether it is exclusive and independent of, and in no way connected with the service, or whether it is so connected and necessary for its performance. (*Kerrains* v. *People, supra.*)

While there is no inconsistency between the relation of landlord and tenant and master and servant, it must appear either that the parties themselves did not treat the occupancy as an incident of the employment, or that it was expressly agreed that both relationships shall subsist simultaneously. (*Mead* v. *Owen,* 80 Vt. 273.) Such a case would arise where the compensation received for services forms a part of a greater rental paid for the apartment. (*Filmat Realty Corp.* v. *Carleo,* 186 Misc. 717.) But in *Chirico* v. *Kings Co. Sav. Bank* (*supra*) it was held that even where the original occupancy was as a tenancy, but the relationship was later changed to that of master and servant, and the parties treated the occupancy as an incident of that relationship, the tenancy was destroyed. Thus, in the absence of Federal regulation controlling the situation, the landlord would be entitled to immediate possession of the premises on termination of the employment by him. (1 McAdam on Landlord and Tenant, p. 152.)

The respondent urges, however, that the Federal housing act protects superintendents equally with tenants. With this conclusion, the court is unable to agree; and feels constrained to award possession to the landlord.

Prior to the most recent enactment extending its operation, it was held that a superintendent did not fall within its protection. (*Cosvira Realty Corp.* v. *Hertelendy,* 61 N. Y. S. 2d 283.) And this holding accorded with the official interpretation placed

upon the act (Office of Price Administration, Rent Service, pp. 200, 905): " This interpretation deals with that portion of Section 1 (b) 2 which provides for exemption only if the dwelling space occupied by the employee-tenant is provided ' as part or all of his compensation.' This requirement is satisfied where the employee-tenant receives wages and pays no rent for the dwelling space; where he receives wages in excess of the rent he pays; or where he pays no rent but receives the space in full payment of his services. It does not apply where he pays rent and, in addition, performs services which are paid for merely by a rent reduction."

The respondent contends that the act extending the operation of Federal housing control has changed this rule so as to bring all employees in possession within its purview. In support, he cites an opinion of the regional New York area office holding that premises occupied by a superintendent are not decontrolled. That opinion, however, states clearly that such premises " occupied by a superintendent or service employee living there rent free is controlled *if now rented to a tenant.*" It significantly does not state that it is controlled while the employee is in possession.

The reason for this is apparent. Control under Federal statute covers two distinct fields, i.e., one of rents and the other of evictions. Obviously the regional office was treating of rents and not of evictions. It clearly refers to limitations upon the rental charges to tenants who may enter into possession after the premises are vacated by the employee. In no sense does it afford protection against eviction to the employee. This view finds further support in the report of the Committee on Banking and Currency of the House of Representatives containing the following statement (2 House Misc. Reports, 80th Cong., 1st Sess., report No. 317, p. 13): " Certain types of housing accommodations are excluded from *rent controls.*" (Italics supplied.) And at page 16: " The definition of ' controlled housing accommodations ' specifies the housing accommodations with respect to which the *rent regulation* provided by this title will apply." (Italics supplied.)

Yet the statute guarantees protection against evictions, in given instances. Subdivision (a) of section 209 of the Housing and Rent Act of 1947 (U. S. Code, tit. 50, Appendix, § 1899) now provides: " No action or proceeding to recover possession of any controlled *housing accommodations* with respect to which a maximum rent is in effect under this title shall be maintain-

able by any landlord against any *tenant* in any court, notwithstanding the fact that the *tenant* has no lease or that his lease has expired, *so long as the tenant continues to pay the rent* to which the landlord is entitled ''. (Italics supplied.)

This section places two conditions for bringing it into force. First, the housing accommodations must be controlled, and second, the occupant must be a tenant. The term '' controlled housing accommodations '' is thus clearly referable to rent control. Had Congress intended to cover all occupants of controlled housing accommodations under subdivision (a) of section 209, regardless of whether or not they be tenants, it would not have placed therein the limitation appearing that the occupant be such tenant.

We have already observed that at common law, the respondent is not deemed a tenant. No statute has changed this rule. Congress is presumed to have enacted the statute with knowledge of the existing law (*Cumberland Tel. & Tel. Co.* v. *Kelly,* 160 F. 316, 321): '' ' the best construction of a statute is to construe it as near to the rule and reason of the common law as may be, and by the course which that observes in other cases.' ''

The scope of the Federal statute may not be extended or enlarged by interpretation. (*Hermitage Co.* v. *Preziose,* 188 N. Y. S. 434, 435.)

And this was recognized as the law by Mr. Justice RABIN in *Weir* v. *Mosale Realty* (N. Y. L. J., Sept. 17, 1948, p. 477, col. 7) where, in treating of an application by an employee for an injunction against summary proceedings, based on a claim of unfair labor practice resulting in his discharge, the court in denying the injunction, recognized the need for relief against eviction pending a determination of the question of alleged unfair labor practice, and afforded a stay pending the determination on appeal. A ruling that the Federal housing law afforded ample protection would have obviated the necessity of a stay.

Similarly in this case, in view of the fact that the respondent has indicated an intention to appeal, the issuance of a warrant will be stayed for a period of five days from the service of a copy of the final order to be entered herein, to afford the respondent the opportunity of applying to the Appellate Division for a further stay.