OPINION OF THE COURT
Harold Tompkins, J.
The novel issue which is raised in this holdover proceeding is whether the respondent, until recently the building superintendent, is entitled to retain possession of his apartment because his father, the prior superintendent of the building from 1933 until his death, originally entered into possession of that apartment as a tenant.
During the winter of 1933, respondent, with his father and family, moved into an apartment at 56 Henry Street (apartment 4), New York, New York. The respondent’s father took possession solely as a rent-paying tenant. Some months later, during the spring of 1933, the respondent’s father was employed by the petitioner’s predecessor in interest as the superintendent of the building in which the apartment was located. The compensation for his services was the rent-free use of the apartment and an initial salary of $12 per month. The respondent’s father remained in his capacity of superintendent until *212 his death in 1949, whereupon his son, the respondent, became the superintendent and remained as such until the termination of his employment in 1984.
On May 8, 1957, the apartment was exempted from rent control so long as a superintendent was in occupancy under New York State Rent and Eviction Regulations (9 NYCRR) § 2100.10 (b). Similarly, on June 6, 1962, the same determination was made pursuant to New York City Rent and Eviction Regulations § 2 (g) (3) (in McKinney’s Uncons Laws of NY).
At some time in 1984, after purchasing the apartment house, the petitioner terminated respondent’s employment. The petitioner commenced the instant summary holdover proceeding on February 14, 1985. Both parties have moved for summary judgment and assert that there are no issues of fact.
Petitioner landlord concedes that the respondent’s father’s right to occupy the apartment would have continued to exist had he been terminated as a superintendent because he originally entered into occupancy as a tenant. Applicable case law uniformly supports this conclusion.
If the occupancy of an apartment is incidental to the superintendent’s service or is required expressly or impliedly by the employer, a landlord-tenant relationship generally does not exist (Weisberg v Cohen, 129 App Div 496, 497 [1908]; Tursi v Esposito, 194 Misc 498, 499 [NY City Mun Ct 1949]; 1 New York Law of Landlord and Tenant § 79, at 139 [1937]). However, where a landlord-tenant relationship already exists, it is not destroyed when the tenant is subsequently engaged as a superintendent (Filmat Realty Corp. v Carleo, 186 Misc 717, 719 [Sup Ct, NY County 1946]; Mayer v Norton, 62 Misc 2d 887, 888 [Civ Ct, NY County 1970]; Cosvira Realty Corp. v Hertelendy, 61 NYS2d 283, 284 [NY City Mun Ct 1946]). The subsequent master-servant relationship may exist independently and concurrently with the continuing landlord-tenant relationship (Mayer v Norton, 62 Misc 2d, at p 888; Cosvira Realty Corp. v Hertelendy, 61 NYS2d, at p 285). Further, the landlord-tenant relationship survives the termination of the master-servant relationship (Filmat Realty Corp. v Carleo, 186 Misc. at p 719; York Sham Wong Yee v Indelicato, 67 Misc 2d 634, 636 [Civ Ct, NY County 1971]) and the tenant retains the same tenancy rights he received upon his original possession.
There are circumstances where some courts have found that a tenant exchanged his status for that of an employee and the landlord-tenant relationship was ended. (Marsar Gardens v *213 Guevara, 108 Misc 2d 817, 818 [Civ Ct, NY County 1981] [occupying a new apartment pursuant to the employment contract effectively canceled the previous lease]; contra, Dobson Factors v Dattory, 80 Misc 2d 1054, 1057 [Civ Ct, NY County 1975]; York Sham Wong Yee v Indelicato, 67 Misc 2d, at p 636.) However, in the instant case, it is conceded that the respondent’s father retained his tenancy rights until his death in 1949.
Respondent contends that upon the death of his father, as a remaining family member who had been living with the prime tenant prior to his death, the respondent is entitled to possession of the apartment in his own right. Petitioner, on the other hand, claims that since the respondent had never been a tenant, he obtained, at the time of his father’s death, the same status as any other newly hired superintendent who receives a rent-free apartment as partial or full compensation for his services. Thus, petitioner contends that the apartment was merely incidental to the respondent’s employment and that upon the termination of his employment, his right to occupy the apartment is extinguished since the respondent is not a tenant.
This court finds that because the respondent’s father died as a tenant, and due to the respondent’s continuous cohabitation and his relationship to the previous tenant (his father), the respondent has the right to retain possession of the apartment. New York City Rent and Eviction Regulations § 56 (d) bars eviction where the remaining occupant is a surviving spouse or other member of the deceased tenant’s family who has been living with the tenant.[1] The respondent is clearly protected by this section. The fact that the respondent’s father and the respondent were employed as superintendents does not exterminate their tenancy rights. There are no facts presented in the papers before the court that indicate that possession by either the respondent’s father or the respondent was "clearly incidental to such employment [as a superintendent]”. (Dobson Factors v Dattory, 80 Misc 2d, at p 1055.) Therefore, the separate relationship of landlord-tenant was bestowed upon the respondent by section 56 (d) of the regulations. Recent apposite case law supports this analysis.
*214 In Hartman v Sykes (66 Misc 2d 764 [Civ Ct, NY County 1971]) the respondent had been living with her father who was employed by the petitioner landlord as a superintendent until his death. After her father’s death, the respondent remained in occupancy and was employed as the superintendent by the landlord until her employment was terminated three and one-half years later. In the summary proceeding to dispossess the respondent as a holdover tenant pursuant to RPAPL 713 (11), the court found that the respondent tenant did not have a right to remain in possession under the statute because the respondent’s father had entered into possession of the apartment as an incident of his employment and had never been a tenant (Hartman v Sykes, 66 Misc 2d, at p 765). The respondent was found to have occupied the premises "solely by virtue of the [master-servant] relationship between her father and the petitioners.” (Hartman v Sykes, 66 Misc 2d, at p 765.) The court suggested that "[h]ad the respondent’s father entered into possession as a tenant and then become superintendent, his landlord-tenant relationship would not have been terminated * * * The respondent in that instance would have obtained [the] status [of] 'tenant’ which would not have been destroyed by her subsequent employment.” (Hartman v Sykes, 66 Misc 2d, at pp 765-766.)
The court’s reasoning in Hartman (supra) was followed in Yee Fong Toy v Garone (Civ Ct, NY County, L&T No. 106393/79 [1979]). There the petitioner’s parents had taken possession of the apartment in question as tenants in 1915. Petitioner’s father and later her mother subsequently became superintendents of the premises. After her mother could no longer perform the duties of the job, petitioner became the superintendent. After terminating the petitioner’s employment, the respondents sought to evict her. The court ruled that the petitioner tenant was entitled to remain in possession of her apartment.
The reasoning in Hartman and Garone (supra) correctly reflects the principle of the separate and independent relationships of landlord-tenant and master-servant. In the instant proceeding, the facts indicate that the respondent’s performance of the services as a superintendent was unrelated to the occupancy which, in fact, was derived from his father’s status as a tenant. It would be fallacious to maintain that the right of a family member to retain possession after the death of his or her parent(s), as protected by New York City Rent and Eviction Regulations § 56 (d), is nullified simply because *215 the protected family member has undertaken the separate role of a superintendent. Thus, irrespective of whether the respondent was a tenant before his father’s death, the respondent is entitled to continued possession of the subject apartment.
Petitioner contends that this finding would be tantamount to granting hereditary rights to superintendents qua superintendents. This court makes no such determination. It has been established that a superintendent who occupies an apartment solely as an incident to his employment loses his right to occupy the apartment when his employment is terminated (Weisberg v Cohen, 129 App Div, at p 497; Tursi v Esposito, 194 Misc. at p 499). In such a case, it is clear that a landlord could commence a summary holdover proceeding against the terminated superintendent pursuant to RPAPL 713 (11).[2] But where, as in the instant case, the superintendent also has the status of a tenant, the right to occupy the apartment flows from the tenancy, not the master-servant relationship.
Finally, petitioner contends that since the respondent was not a superintendent of the premises between the period of the enactment of the rent control laws and the death of the respondent’s father, the respondent is not entitled to the protection of the rent laws and regulations. This contention is without merit.
The apartment in question was exempted from rent control pursuant to New York City Rent and Eviction Regulations § 2 (g) (3) and New York State Rent and Eviction Regulations § 10 (b). This exemption exists only so long as the "[djwelling space [is] occupied by * * * superintendents * * * to whom the space is provided as part or all of their compensation without payment of rent and who are employed for the purpose of rendering services in connection with the premises of which the dwelling space is a part.” (New York City Rent and Eviction Regulations § 2 [g] [3]; New York State Rent and *216 Eviction Regulations § 10 [b].) An apartment which is no longer exempted from rent control because a superintendent no longer occupies it, becomes decontrolled if the superintendent is not also a tenant (Matter of Lavanant [Joy], NYLJ, Dec. 5, 1978, p 7, col 2 [Sup Ct, NY County 1978]). In the instant case, because the original tenancy existed at the time of the inception of rent control and thereafter, the respondent’s father and the respondent had and continue to have tenancy rights under the rent control laws. The apartment is and has been subject to rent control although temporarily exempted during the period of time it was occupied by a superintendent (Matter of Garone v Joy, 107 Misc 2d 1094, 1096 [Sup Ct, NY County 1981]). Upon the expiration of the exemption, the apartment reverts to its controlled status (Matter of Garone v Joy, 107 Misc 2d, at p 1094; New York City Rent and Eviction Regulations § 2 [g] [3]; New York State Rent and Eviction Regulations § 10 [b]). Accordingly, whether or not the respondent was a superintendent after the promulgation of the rent control laws and before the death of his father has no bearing on the issue.
The respondent is a tenant of the subject apartment and is entitled to continued occupancy as a rent-controlled tenant. Accordingly, respondent’s motion for summary judgment is granted. Petitioner’s cross motion for summary judgment is denied. Petition is dismissed.

. Section 56 (d) states: "No occupant of housing accommodations shall be evicted under this section where the occupant is either the surviving spouse of the deceased tenant or some other member of the deceased tenant’s family who has been living with the tenant.”

. Section 713 reads, in pertinent part:
"Grounds where no landlord-tenant relationship exists "A special proceeding may be maintained under this article after a ten-day notice to quit has been served upon the respondent in the manner prescribed in section 735, upon the following grounds * * *
"11. The person in possession entered into possession as an incident to employment by petitioner, and the time agreed upon for such possession has expired or, if no such time was agreed upon, the employment has been terminated; no notice to quit shall be required in order to maintain the proceeding under this subdivision.”