GRANT v DETROIT ASSOCIATION OF WOMEN'S CLUBS

Docket No. 93157. Argued June 10, 1993 (Calendar No. 3). Decided
September 8, 1993.

Ellsworth Grant brought an action in the Wayne Circuit Court
against the Detroit Association of Women's Clubs, seeking
injunctive relief and damages, after the association locked him
out of his apartment, which had been provided as compensation
for his services to the association as a full-time caretaker
pursuant to an employment contract. At a hearing to show
cause, the court, Thomas J. Foley, J., ruled that no tenancy
existed and that the plaintiff was a trespasser. The matter was
held in abeyance pending commencement of summary eviction
proceedings. The 36th District Court, David M. Bradfield, J.,
dismissed the case, finding that the plaintiff was not a tenant,
and, even if he was, the defendant properly had given thirty-
day's notice to quit as required by the employment contract.
The Wayne Circuit Court, J. Phillip Jourdan, J., affirmed. The
Court of Appeals, SAWYER, P.J., and D. E. HOLBROOK, JR., and
MACKENZIE, JJ., denied leave to appeal (Docket No. 128104).
Thereafter, the original circuit court action progressed to medi-
ation, and, after rejection by the association of an award for
the plaintiff, the court, J. Phillip Jourdan, J., granted summary
disposition for the defendant and dismissed the action. The
Court of Appeals, D. E. HOLBROOK, JR., P.J., and BRENNAN and
CAVANAGH, JJ., affirmed in an unpublished opinion per curiam,
holding that if an employee occupies the premises of an em-
ployer's business and does not pay rent, a landlord-tenant
relationship does not exist (Docket No. 129069). The plaintiff
appeals.

In an opinion by Justice MALLETT, joined by Chief Justice
CAVANAGH, and Justices LEVIN, BRICKLEY, and BOYLE, the
Supreme Court held:

Where the essential characteristics of a landlord-tenant rela-
tionship are present, an employment contract in which use and

REFERENCES

Am Jur 2d, Landlord and Tenant §§ 11, 54, 514.
See ALR Index under Landlord and Tenant; Rent.

occupancy of an apartment are the sole and full compensation for services rendered may create a tenancy.

1. Rent may be provided in the form of services as well as money. A landlord-tenant relationship is created when the owner of an estate conveys an interest in the estate for a term less than the owner's for valuable consideration. The purpose of the occupancy is a crucial point of inquiry, and depends on the language of the agreement and attendant circumstances. Where occupation is not treated by the parties as a mere incident of employment, and the employer has relinquished control of the premises, a tenancy is created and rental may be satisfied in whole or in part by the services rendered by the employee.

2. In this case, the essential characteristics of a landlord-tenant relationship are present. The plaintiff agreed to provide caretaker services in exchange for use and occupancy of the apartment, the consideration was his labor, possession and control of the premises was transferred to the plaintiff, his use was exclusive, and the length of the tenancy was agreed upon— the length of the employment relationship. Occupancy was independent of the services rendered. Living on the premises was unnecessary for the fulfillment of his caretaking duties. The occupancy was not treated by the parties as a marginal consequence of employment because the use and occupancy of the apartment was the sole and full compensation for the services provided. Such an arrangement implies that payment for the occupancy of the apartment was in the form of the caretaking services provided by the plaintiff.

3. MCL 600.2918; MSA 27A.2918 was enacted to prevent landlords' self-help in executing evictions. This policy should extend to situations in which housing is exchanged for employment. The type of consideration has no bearing on the nature of the relationship. The landlord's dual status does not create an automatic exception to the applicable laws.

Reversed and remanded.

Justice GRIFFIN, joined by Justice RILEY, dissenting, stated that in this case, no landlord-tenant relationship existed. Absent any indication that the parties intended to establish a landlord-tenant relationship, their relationship was simply that of employer and employee.

An employee who occupies premises owned by an employer does not become a tenant of the employer. The distinction between a landlord-tenant relationship and that of master and servant depends on the nature of the holding. In order to find a landlord-tenant relationship it must appear either that the

parties did not treat the occupancy as an incident of the employment, or that it was expressly agreed that both relationships subsist simultaneously. Where a caretaker is granted occupancy of premises in exchange for services, no tenancy is created.

In this case, the essential characteristics of a landlord-tenant relationship are not present. The agreement was labeled a contract of employment rather than a lease. The possession of the apartment was not independent of the services rendered; rather, it was premised upon the plaintiff's employment as a caretaker, and its use was the sole and full compensation for his labor. Neither the plaintiff nor the defendant could have any expectation that the use of the apartment would continue after the termination of employment.

MCL 600.2918; MSA 27A.2918 does not apply in this case. There was no force or threat of force used to change the locks to bar the plaintiff's reëntry, and thus no cause of action under subsection 1. Because the plaintiff was not a tenant, he may not recover under subsection 2.

LANDLORD AND TENANT — EMPLOYMENT CONTRACTS — COMPENSATION — USE AND OCCUPANCY SERVICES RENDERED.

Where the essential characteristics of a landlord-tenant relationship are present, an employment contract in which use and occupancy of an apartment are the sole and full compensation for services rendered may create a tenancy (MCL 600.2918; MSA 27A.2918).

Wayne County Neighborhood Legal Services (by *Linda D. Bernard* and *Candace Crowley*) for the plaintiff.

*Hansen Clarke* for the defendant.

Amici Curiae:

*Marilyn Mullane* and *Ted Phillips* for United Community Housing Coalition, Michigan Housing Coalition, Michigan Legal Services, Coalition On Temporary Shelters, Inter-Faith Hospitality Ministries, Michigan Up & Out of Poverty Campaign, Homeless Drop-in Center, Urban League Homeless Strategy Coalition, Cass Corridor Neighbor-

hood Development Corporation, Alternatives for Girls, and Bishop Thomas Gumbleton.

*Richard G. Kessler* and *Gary N. Gershon* for Michigan Migrant Legal Assistance Project, Inc., Michigan Farmworker Ministry Coalition, and Union de Trabajadores Agricolas de Michigan.

MALLETT, J.

## I

The present case involves the question whether a landlord-tenant legal relationship may be recognized pursuant to a contract of employment where use and occupancy of an apartment are the sole and full compensation for the services rendered. We answer in the affirmative and reverse and remand the case for further proceedings consistent with this opinion.

## II

Plaintiff Ellsworth Grant occupied a two-bedroom apartment in defendant Detroit Association of Women's Clubs (DAWC) in the City of Detroit. Use and occupancy of the apartment, as well as basic utilities, were provided by DAWC pursuant to an employment contract in exchange for plaintiff's services as a full-time caretaker. The contract provided that the use of the apartment and payment for the utilities were the "sole and full compensation for [the] agreement."[1] The contract further stated that DAWC could summarily dismiss plaintiff for cause, or terminate the agree-

---

[1] For all services rendered under this agreement the Employer shall provide a two bedroom apartment for the use and occupancy of the Employee, all utilities for said apartment, except telephone service, shall be furnished/provided by the Employer. This shall be the sole and full compensation for this agreement.

ment without cause at any time upon thirty days' written notice.[2]

In a letter dated March 1, 1989, the president of DAWC terminated plaintiff's employment. Plaintiff testified that he received the letter on March 8, 1989. He responded on March 10, questioning the reasons for the termination. On March 18, the president replied, indicating "unsatisfactory" service as the reason for termination.

Without further notice, the president changed the locks on the apartment on April 5, 1989. Plaintiff's personal possessions, including cash, kitchen items, and a camera, remained inside the apartment.

Plaintiff brought an action in Wayne Circuit Court, seeking injunctive relief and damages, alleging that the change of locks unlawfully interfered with his possessory interest in the apartment. At a show cause hearing, the circuit court ruled that no tenancy existed and that plaintiff was a trespasser. The matter was held in abeyance pending commencement of summary eviction proceedings in the district court.

DAWC promptly instituted such proceedings, which were dismissed by the district court because it found that Grant was not a tenant, and, even if he was a tenant, defendant properly had given thirty days' notice. The Wayne Circuit Court affirmed, holding that no tenancy existed. The Court of Appeals denied Grant's application for leave to appeal.

The original circuit court action then progressed

─────────

[2] Employer may, with just cause, dismiss Employee summarily, and without cause may terminate this agreement, at any time, upon thirty (30) days written notice. Employee may terminate this agreement upon thirty (30) days written notice to the Employer. In such an event the Employee shall continue to render her [sic] services up to the date of termination.

to mediation.[3] Thereafter, the parties filed cross motions for summary disposition, and the court granted DAWC's motion and dismissed the action.

The Court of Appeals affirmed in an unpublished per curiam opinion, holding that if an employee occupies the premises of an employer's business and does not pay rent, then a landlord-tenant relationship does not exist. Accordingly, it declined to address whether DAWC's failure to comply with the thirty-day notice requirement constituted unlawful interference with plaintiff's possessory rights. Plaintiff's application for leave to appeal was granted by this Court. 441 Mich 880 (1992).

III

Defendant contends that it is an established rule that an employee who occupies premises incidental to his employment is not a tenant, and that the employee loses the right to occupy the premises once the employment is terminated. In *Alpine Twp School Dist No 11 v Batsche,* 106 Mich 330, 333; 64 NW 196 (1895), a teacher occupying the upper level of a schoolhouse remained in possession of the premises with the school district's permission after the school term ended. This Court held that an employment, and not a landlord-tenant, relationship existed between the parties because there were no terms to the agreement, no rent was reserved, and the purpose of the occupancy was to enable the employee to better serve the employer. However, the Court further held that a tenancy by sufferance may result where the employer acquiesces in the occupancy, regardless of the parties' original relationship. *Id.* at 334.

The present case is distinguishable. The court in

---

[3] The mediation panel awarded plaintiff $12,000, which he accepted and DAWC rejected.

*Batsche* found that the plaintiff was a tenant by sufferance, because he was permitted to remain on the premises without having to perform his employment duties. Thus, no "housing in exchange for services" arrangement continued to exist. At no time in the present case, however, did defendant DAWC acquiesce in Grant's possession of the apartment. Furthermore, the employment contract in the present case expressly provided that use and occupancy of the premises were "the sole and full compensation" for the plaintiff's services, the inference being that the plaintiff was paying for the use of the apartment by providing his services as caretaker for defendant DAWC.

In *Lane v Au Sable Electric Co,* 181 Mich 26, 31; 147 NW 546 (1914), the chief operator of the defendant's substation and his family occupied a dwelling house as part of his compensation for employment. When the plaintiff went on strike, the defendant notified him to vacate the premises, but he refused. A short time later, the defendant's representatives moved all of the plaintiff's furniture onto the street. This Court held that a landlord-tenant relationship did not exist because the plaintiff was in possession of the defendant's property by virtue of his employment. When the plaintiff chose to strike, his entitlement to the property ceased to exist.

However, plaintiff asserts, and this Court notes, that contrary authority exists in our state and other jurisdictions. In *Shaw v Hill,* 79 Mich 86, 89; 44 NW 422 (1889), a third party agreed to keep trespassers off the defendant's land in exchange for occupancy of the land. This Court made clear that

[r]ent may be reserved in services as well as in money; and if [the employee] agreed to render

such services, for the use of the land, he occupied the position of tenant at will to [the employer].

Plaintiff also points to *Munson v Menominee Co,* 371 Mich 504; 124 NW2d 246 (1963), which offers insight through its treatment of the term "rent." There, the plaintiff was employed with the department of social welfare within the county. While the plaintiff attempted to adjust a window shade in her office, the shade fell from its bracket and struck the plaintiff on the head. The defendant claimed governmental immunity, and the issue arose whether the defendant, in furnishing the office space to the state, acted in a proprietary capacity or was engaged in the exercise of a governmental function. In deciding that it was a proprietary function, this Court concluded that rent may be provided in services as well as money, and that the amount of consideration for the lease is not controlling.

The term "rent" is defined in 32 Am Jur, Landlord and Tenant, § 428, p 347 as follows:

"The word 'rent' derives from the Latin word 'reditus.' In ordinary use, it means the return made by one who occupies real estate under an express or implied contract with the owner, for the occupation of the premises, and is defined broadly as the compensation in money, provisions, chattels, or services, paid or given in exchange for the use and occupancy of real estate." . . .

Likewise, in 52 CJS, Landlord and Tenant, § 462, p 201, it is said:

" 'Rent' as the term is employed in the law of landlord and tenant, may be defined as the return, whether of money, service, or specific property, which the tenant makes to the landlord as compensation for the use of the demised premises."[4]

---

[4] *Munson, supra* at 512-513.

Plaintiff notes that the Court of Appeals in the instant case quickly dismissed two instructive federal cases. In *Folgueras v Hassle,* 331 F Supp 615, 621 (WD Mich, 1971), the defendant owned and operated agriculture labor camps at which housing was a portion of the migrant workers' compensation for labor.[5] After the plaintiffs were forcibly removed from the premises, they sought a declaration of their right of access to the camps. The court concluded that the owner of the migrant camp could not lawfully bar access by visitors or representatives of assistance groups seeking entrance to the camps. In so doing, the court concluded that the migrants living in the camp were tenants, and that their tenancy entitled them, their guests, and representatives of assistance organizations to "full rights of ingress and egress to and from their dwellings." *Id.* at 624. The court noted that a landlord-tenant relationship was present.

> Thus, all the elements of the typical landlord-tenant relationship are present. The migrant pays for the dwelling he occupies; the landlord binds himself to provide a dwelling of a fixed quality; [and] the migrant occupies the dwelling exclusive of the landlord for an agreed upon term—the length of his employment. [*Id.*]

In *Rodriguez v Berrybrook Farms, Inc,* 672 F Supp 1009, 1020 (WD Mich, 1987), the plaintiffs argued that migrant camp owners and workers enjoyed a landlord-tenant relationship even though the workers did not pay cash for their housing. Relying on *Folgueras,* the court agreed and concluded that "the rental relationship arises because agri-

---

[5] The agreement between the owner and the workers was set forth in a "Clearance Order," which stated that housing was provided and "rent [was] free." *Folgueras, supra* at 624.

cultural workers in essence 'pay' rent for the 'free housing' when they exchange their labor for it."

These cases establish the importance of examining whether the essential characteristics of a landlord-tenant relationship are present. The Court of Appeals has stated that a lease, and hence a landlord-tenant relationship, is created when the owner of an estate conveys to another a portion of his interest for a term less than his own for valuable consideration, thereby granting the lessee use and enjoyment of the premises during the period stipulated. *Dep't of Natural Resources v Bd of Trustees of Westminster Church of Detroit,* 114 Mich App 99; 318 NW2d 830 (1982). See also 51C CJS, Landlord and Tenant, § 1, p 32.[6]

In addition to the essential characteristics of the landlord-tenant relationship, the purpose of the occupancy has been deemed a crucial point of inquiry.

> The relation of landlord and tenant is clearly distinguishable from that of master and servant, the principal distinction being in the possession by the tenant of an estate in the demised premises, which is lacking in the case of a servant. The question depends on the nature of the holding, whether it is exclusive and independent of, and in no way connected with, the service, or whether it is so connected, or is necessary for its performance.

\* \* \*

---

[6] It is generally held that, in order that the relation of landlord and tenant may exist, there must be present all the necessary elements of the relation, which include permission or consent on the part of the landlord to occupancy by the tenant, subordination of the landlord's title and rights on the part of the tenant, a reversion in the landlord, the creation of an estate in the tenant, the transfer of possession and control of the premises to him, and, generally speaking, a contract, either express or implied, between the parties.

[T]here is no inconsistency between the relation of landlord and tenant and that of master and servant, and, where it appears that the occupation of the master's premises is not treated by the parties themselves as a mere incident of the service, and the master has parted with the control of the premises, it may be regarded in law as an occupation as tenant, even though the rental is satisfied in whole or in part by the services rendered. Whether the occupancy is, in a given case, that of a tenant or of a servant or employee depends on the language of the agreement and the attendant circumstances.[7]

Plaintiff makes it clear that the essential characteristics of a landlord-tenant relationship are present. Plaintiff agreed to provide his services as caretaker in exchange for use and occupancy of the apartment at defendant's clubhouse; plaintiff's consideration for the use and occupancy of the apartment was his labor; defendant transferred possession and control of the premises to plaintiff; plaintiff occupied the apartment exclusive of defendant; and the length of the tenancy was for an agreed-upon duration—the length of the employment relationship. That the agreement is labeled a "Contract of Employment," as noted by the dissent,[8] is not probative of the nature of the relationship between the parties.

It is also apparent that plaintiff's occupancy of the premises was essentially independent of the services he rendered; it cannot be said that plaintiff's occupancy was essential to his position as caretaker. Living on the premises was unnecessary for fulfillment of his caretaking duties, including cleaning the building as needed, handling reservations for the use of the clubhouse, setting

[7] 51C CJS, Landlord and Tenant, § 6(2), pp 39-40. See also *Batsche, supra* at 333-334.

[8] *Post* at 611.

up equipment when the clubhouse was occasionally rented, collecting rent and other charges, and snow removal. Although living on the premises may have made it more "convenient"[9] for plaintiff to fulfill his duties, his residence did not guarantee compliance with his contractual obligations. That plaintiff's presence on the property gave defendant the additional benefit of on-site, twenty-four hour security was an incidental outgrowth of the employment relationship; providing security to the premises was not a part of the employment contract. While it is true that plaintiff's occupancy provided some advantages to one or both parties to the rent as payment for services relationship, we do not conclude that this fact detracts from the tenancy.

Furthermore, the occupancy was not treated by the parties as a marginal consequence of employment. According to the terms of the employment contract, use and occupancy of the apartment were "sole and full compensation" for the services he provided. As stated previously, such an arrangement implies that payment for the occupancy of the apartment was in the form of the caretaking services provided by the plaintiff.

Finally, public policy buttresses our decision. The Legislature enacted MCL 600.2918; MSA 27A.2918,[10] commonly referred to as the "antilock-

[9] *Post* at 612.

[10] MCL 600.2918; MSA 27A.2918 provides in pertinent part:

(1) Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession.

(2) Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner, lessor, licensor, or their agents shall be entitled to recover the amount of his actual damages or $200.00, whichever is greater,

out law" in an effort to prevent landlords' self-help in executing evictions. The Legislature sought to reduce the number of violent confrontations occurring as a consequence of landlords entering onto the premises while tenants believed that they were rightfully in possession. There is no doubt that such a policy should be extended to cover situations in which housing is exchanged for employment. The type of consideration given for the housing has no bearing on the nature of this potentially volatile relationship. Further, the fact that a landlord wears two hats, landlord and employer, does not excuse the landlord from compliance both with housing and employment laws. The landlord's dual status does not create an automatic exception to the applicable laws.

IV

We hold that where the essential characteristics of a landlord-tenant relationship are present, an employment contract may create a tenancy. The lower court improperly granted defendant's motion for summary disposition. We remand this case to the circuit court for full consideration of plaintiff's claim that defendant's failure to comply with the thirty-day notice requirement unlawfully interfered with plaintiff's possessory interest pursuant to MCL 600.2918; MSA 27A.2918.

Reversed and remanded.

---

for each occurrence and, where possession has been lost, to recover possession. Unlawful interference with a possessory interest shall include:

(a) The use of force or threat of force.

(b) The removal, retention, or destruction of personal property of the possessor.

(c) A change, alteration, or addition to the locks or other security devices on the property without forthwith providing keys or other unlocking devices to the person in possession.

CAVANAGH, C.J., and LEVIN, BRICKLEY, and BOYLE, JJ., concurred with MALLETT, J.

GRIFFIN, J. (*dissenting*). The majority holds that the employment contract in the instant case created a landlord-tenant relationship between plaintiff and defendant. Because I would hold that no such relationship existed, I respectfully dissent.

I

An employee who occupies premises owned by his employer does not thereby become a tenant of the employer. As one commentator explains,

> Employee occupancy of living quarters furnished by an employer may create a landlord-tenant relationship, or it may be only a license coextensive with employment. Generally, occupancy which is subsidiary and necessary to the efficient performance of the employee's duties does not give rise to a landlord-tenant relation. [Schoshinski, American Law of Landlord and Tenant, § 1:6, p 17.]

As the majority correctly observes, this Court has stated this rule on at least three occasions. See *Lane v Au Sable Electric Co,* 181 Mich 26, 32; 147 NW 546 (1914); *Tucker v Burt,* 152 Mich 68, 72; 115 NW 722 (1908); *Alpine Twp School Dist No 11 v Batsche,* 106 Mich 330, 332-333; 64 NW 196 (1895). In *Lane, supra* at 32, the Court quoted approvingly from *Bowman v Bradley,* 151 Pa 351, 360; 24 A 1062 (1892):

> If the possession of the house be regarded as an incident of the hiring, the incident must fall with the principal. If it be regarded as part of the compensation for labor stipulated for, then the right to the compensation ceased when the labor was discontinued.

The distinction between a landlord-tenant relationship and that of master and servant "depends on the nature of the holding, whether it is exclusive and independent of, and in no way connected with, the service, or whether it is so connected, or is necessary for its performance." 51C CJS, Landlord and Tenant, § 6(2), p 39.[1] In order to find a landlord-tenant relationship, "it must appear either that the parties themselves did not treat the occupancy as an incident of the employment, or that it was expressly agreed that both relationships shall subsist simultaneously." *Maio v Borelli,* 194 Misc 735, 736; 83 NYS2d 532 (1948).[2] Thus, a number of courts have held that where a caretaker or superintendent is granted occupancy of the premises in exchange for his services, no tenancy is created. See *Anderson v William J Davis, Inc,* 553 A2d 648 (DC App, 1989); *Kwong v Guido,* 129 Misc 2d 211, 212-213; 492 NYS2d 678 (1985); *Tursi v Esposito,* 194 Misc 498; 86 NYS2d 702 (1949); *Schuman v Zurawell,* 24 NJ Misc 180; 47 A2d 560 (1946); *Turner v Mertz,* 55 App DC 177; 3 F2d 348 (1925). See also 2 Powell, Real Property, ¶ 221[3], p 16-33.

In *Anderson, supra,* the plaintiffs worked as maintenance men, and one was later named resident manager, in a building owned by the defendant. The two were allowed to share an apartment in the building as compensation for their services, but refused to vacate the apartment when their employment was terminated. Affirming summary judgment for the defendants, the court explained, 553 A2d 649:

---

[1] See also *Davis v Long,* 45 ND 581; 178 NW 936 (1920); 14 ALR 796; *Tatro v Lehouiller,* 147 Vt 151; 513 A2d 610 (1986).

[2] Some courts have recognized a presumption "that the occupancy of premises by an employee was not that of a tenant." *Anderson v William J Davis, Inc,* 553 A2d 648, 649 (DC App, 1989). See also *Turner v Mertz,* 55 App DC 177; 3 F2d 348 (1925).

Appellants in the case at bar were employed by the owners of the apartment building to perform services in the building. They did not pay rent, did not have a lease, and were allowed to occupy the employer-landowner's apartment only as an incident to the services they provided. The conclusion is inescapable that they were servants, not tenants . . . .

Unlike the majority, I am not convinced that the "essential characteristics" of a landlord-tenant relationship are present in the case at bar. *Ante* at 605. The agreement by which plaintiff was allowed to occupy the apartment was labeled a "Contract of Employment," rather than a lease. Clearly, plaintiff's possession of the apartment was not "independent of the services he rendered." *Ante* at 606. Rather, it was premised upon his employment as caretaker; as the majority recognizes, use of the apartment was the "sole and full compensation" for the labor of plaintiff. Neither plaintiff nor defendant could have any expectation that plaintiff's use of the apartment would continue after the termination of his employment.[3]

It is clear that plaintiff's occupation of the apartment, while perhaps not necessary to the performance of his duties under the contract, made the performance of those duties more

---

[3] See 1 Restatement Property, 2d, § 1.2, illustration 4, p 11:

A janitor in an apartment building is given an apartment in the basement so that he will be available to service the building on a 24-hour basis. Neither the landlord nor the janitor would normally contemplate that the janitor, upon being discharged, would be entitled to notice which the landlord must give an ordinary tenant before removing him from the premises.

convenient.[4] Plaintiff's duties included cleaning the building as needed, answering the telephone, and snow removal. The need for those services could arise at any time, and it is obvious that plaintiff's round-the-clock presence enabled him to perform those duties more efficiently. Moreover, as the majority notes, "plaintiff's presence on the property gave defendant the additional benefit of on-site, twenty-four hour security . . . ." *Ante* at 607.

In reaching the conclusion that a landlord-tenant relationship existed in the case at bar, the majority relies on what it describes as "contrary authority," *Shaw v Hill*, 79 Mich 86; 44 NW 422 (1889). *Ante* at 602. In *Shaw*, however, it is clear that the occupant of the land was *not* an employee of the landowner; rather, he took "possession" of the land under an agreement by which he would "make such improvements as he saw fit . . . ." *Id.* at 88. After he took possession, he cleared the land, built a house, and raised crops. While the Court stated that rent may be paid in services, *id.* at 89, nowhere did the Court find that the occupant was an employee of the landowner. In this case, it is undisputed that plaintiff was an employee of defendant.

The majority also relies on two federal court decisions dealing with the rights of migrant farm workers, *Folgueras v Hassle*, 331 F Supp 615 (WD Mich, 1971), and *Rodriguez v Berrybrook Farms, Inc*, 672 F Supp 1009 (WD Mich, 1987). I find

---

[4] See *Bowman v Bradley, supra* at 361:

It is not necessary that occupation of a house, or apartments, should be a necessary incident to the service to be performed in order that the right to continue in possession should end with the service. It is enough if such occupation is convenient for the purposes of the service and was obtained by reason of the contract of hiring.

neither of these cases persuasive in the context of the case at bar. In *Folgueras,* the court found that the migrants were tenants under Michigan law in the context of "the right to invite and associate with guests of the tenant's own choosing." 331 F Supp 625. In *Rodriguez* the court, relying on *Folgueras,* found the existence of a landlord-tenant relationship in order to apply the Michigan Consumer Protection Act, MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.,* to conditions at a labor camp.

Without expressing any disagreement with the results in those cases, I would echo the sentiments of the Supreme Court of New Jersey and "acknowledge that the realities of the relationship between the migrant worker and a farm labor service are unique and summon a judicial response unrestricted by conventional categories, such as employer-employee and landlord-tenant." *Vasquez v Glassboro Service Ass'n, Inc,* 83 NJ 86, 106; 415 A2d 1156 (1980). Thus, I find minimal precedential value in *Folgueras* and *Rodriguez.*

Absent any indication that the parties intended to establish a landlord-tenant relationship, I would find that the relationship between them was simply that of employer and employee.

II

Plaintiff alleges that defendant's conduct violated subsections 1 and 2 of MCL 600.2918; MSA 27A.2918.[5] I would find that neither subsection affords plaintiff the relief he seeks.

---

[5] (1) Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession.

(2) Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner, lessor, licensor, or their agents shall be entitled to recover the

Subsection 1 provides for the payment of treble damages and recovery of possession where "[a]ny person" is ejected or put out in a "forcible and unlawful manner" or "kept out, by force . . . ." At common law, where the relationship between the occupant and the landowner is that of master and servant rather than landlord and tenant, "on termination of employment, an employer could dispossess an employee who occupied premises incidental to his employment." *Vasquez, supra* at 105. However, in *Deroshia v Union Terminal Piers,* 151 Mich App 715, 718; 391 NW2d 458 (1986), a panel of the Court of Appeals held that subsection 1 prohibited forcible self-help without regard to whether the occupier "was in rightful possession of the premises."[6]

The self-help must still be forcible to give rise to treble damages under subsection 1. In an early case construing nearly identical language,[7] *Shaw v*

---

amount of his actual damages or $200.00, whichever is greater, for each occurrence and, where possession has been lost, to recover possession. Unlawful interference with a possessory interest shall include:

(a) The use of force or threat of force.

(b) The removal, retention, or destruction of personal property of the possessor.

(c) A change, alteration, or addition to the locks or other security devices on the property without forthwith providing keys or other unlocking devices to the person in possession.

[6] The panel cited *Gallant v Miles,* 200 Mich 532; 166 NW 1009 (1918), in support of this holding. However, the *Gallant* Court was interpreting a related but separate statute, 1915 CL 13229, that prohibited forcible entry onto land.

[7] 1857 CL 4717:

If any person shall be ejected or put out of any lands or tenements in a forcible and unlawful manner, or being put out, be afterwards holden and kept out by force, or with strong hand, he shall be entitled to maintain an action of trespass, and shall recover therein three times the amount of damages assessed by the jury or a Justice of the Peace in the cases provided by law.

*Hoffman,* 25 Mich 162, 169 (1872), this Court explained:

> [T]he entry or detainer must be riotous, or personal violence must be used or in some way threatened, or the conduct of the parties guilty of the entry or detainer must be such as in some way to inspire terror or alarm in the persons evicted or kept out; in other words, the force contemplated by the statute is not merely the force used against, or upon the property, but force used or threatened against persons as a means, or for the purpose of expelling or keeping out the prior possessor.

Changing the locks on a building does not constitute a forcible entry. In *Patterson v Dombrowski,* 337 Mich 557, 562; 60 NW2d 456 (1953), the defendants, using a key supplied by the builder, took possession of a house contrary to their agreement with the builder and changed the lock.[8] Reversing a judgment for the builder, this Court stated:

> It is conceded in this case that no actual force or violence occurred when the defendants took possession of the property nor during the time that they remained in possession. At no time was there a breach of the peace. Under such circumstances we are constrained to find that there was no forcible entry or detainer as contemplated by the statute . . . .

In this case, there is no allegation that defendants used force or threat of force to change the locks and bar plaintiff's reëntry. Thus, plaintiff has no cause of action under subsection 1.

---

[8] The plaintiffs sought recovery of possession:

When any forcible entry shall be made, or when an entry shall be made in a peaceable manner, and the possession shall be unlawfully held by force, the person entitled to the premises may be restored to the possession thereof, in the manner hereinafter provided. [1948 CL 630.2.]

Force is not a requirement for recovery under subsection 2, enacted in 1976,[9] which allows a tenant to recover actual damages following a lockout or "removal, retention, or destruction of personal property" by the landlord. This section was added because "[s]ome persons believe that not only force, but any device which prevents a tenant from enjoying peaceful possession of the property which he/she possesses, should be deemed unlawful." House Legislative Analysis, HB 4957, Third Analysis (December 22, 1976).

However, unlike § 2918(1), which applies to "[a]ny person," § 2918(2) applies only to a "tenant." Because I would find that plaintiff in the case at bar was not a tenant of defendant DAWC, I would also find that he may not recover under § 2918(2).

### III

For the reasons stated above, I would affirm the decisions of the Court of Appeals and the trial court.

RILEY, J., concurred with GRIFFIN, J.

---

[9] 1976 PA 300.