DE BRUYN PRODUCE COMPANY v ROMERO

Docket No. 138771. Submitted March 2, 1993, at Grand Rapids. Decided October 18, 1993, at 9:10 A.M. Leave to appeal sought.

De Bruyn Produce Company brought an action in the Ottawa Circuit Court against Pablo Romero and others, seeking a declaration regarding the nature of the parties' relationship and legal rights with respect to housing provided to the defendants by De Bruyn. The defendants are migrant farmworkers whom De Bruyn had recruited, employed, and provided with housing in mobile homes in Michigan for which it charged security deposits but not rent. The court, Wesley J. Nykamp, J., issued a judgment declaring that the provision of housing was part of an employer-employee relationship governed exclusively by the Migrant and Seasonal Agricultural Worker Protection Act, 29 USC 1801 *et seq.*, and that the parties were not subject to the summary proceedings for recovery of possession of premises act, the landlord-tenant relationship act, the Truth in Renting Act, or the Michigan Consumer Protection Act. The defendants appealed.

The Court of Appeals *held:*

1. Documents relating to the housing De Bruyn provided to the defendants, which were prepared in an effort to comply with the disclosure requirements of 29 USC 1821(a), did not have provisions for rent, conveyance of possessory interest, or exclusive possession and use of the premises by the defendants and therefore did not constitute a valid rental agreement or create a landlord-tenant relationship that is subject to Michigan law.

2. Because there was no landlord-tenant relationship between the parties, the notice provisions for holdover tenants under the summary proceedings act, MCL 600.5714(1)(c)(iii); MSA 27.5714(1)(c)(iii), and under MCL 554.134; MSA 26.1104 do not apply in this case. However, De Bruyn could have recovered possession under another subsection of the summary proceedings act, MCL 600.5714(1)(e); MSA 27A.5714(1)(e), which gov-

REFERENCES

Am Jur 2d, Landlord and Tenant §§ 55-59, 1115.
See ALR Index under Landlord and Tenant.

erns recovery of possession from persons holding possession by force after peaceable entry.

3. In recovering possession of the premises by judicial process, De Bruyn would not have been limited to those remedies provided in the summary proceedings act; it could have sought other forms of relief, such as statutory and common-law equitable relief, including injunction.

4. The defendants were not tenants who were subject to the protections of the landlord-tenant relationship act, MCL 554.601 *et seq.*; MSA 26.1138(1) *et seq.*, because the act applies to tenants who pay rent.

5. The Truth in Renting Act, MCL 554.631 *et seq.*; MSA 26.1138(31) *et seq.*, which regulates rental agreements, does not apply in this case because there was no rental agreement between the parties.

6. The Michigan Consumer Protection Act, MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.*, which prohibits unconscionable, deceptive, or unfair practices in the rental of real property, does not apply in this case because the defendants' occupancy of De Bruyn's premises was not pursuant to a lease or rental agreement.

Affirmed.

MASTER AND SERVANT — AGRICULTURAL EMPLOYERS — MIGRANT FARMWORKERS — EMPLOYER-PROVIDED HOUSING.

An agricultural employer's provision of rent-free housing to migrant farmworkers as part of employment does not give rise to a landlord-tenant relationship that would make the employer and the farmworkers subject to the provisions of the summary proceedings act for holdover tenants, the landlord-tenant relationship act, the Truth in Renting Act, or the Michigan Consumer Protection Act (MCL 445.901 *et seq.*, 554.601 *et seq.*, 554.631 *et seq.*, 600.5714[1][c][iii]; MSA 19.418[1] *et seq.*, 26.1138[1] *et seq.*, 26.1138[31] *et seq.*, 27.5714[1][c][iii]).

*Richard M. Van Orden,* for the plaintiff.

Michigan Migrant Legal Assistance Project, Inc. (by *Gary N. Gershon*), for the defendants.

Amici Curiae:

*Richard W. McHugh* and *Jordan Rossen,* for International Union, UAW.

*Richard Kessler,* for Union de Trabajadores ·Agricolas de Michigan.

*James Strothman,* for Migrant Legal Action Program.

*Marilyn Mullane,* for United Community Housing Coalition and Michigan Legal Services.

*David Shaltz,* for Michigan Housing Coalition.

*James J. Sheehan,* for Catholic Pastoral Alliance and Auxiliary Bishop Thomas Gumbleton.

*Suzanne Sattler,* for Michigan Farmworker Ministry Coalition.

Before: McDONALD, P.J., and REILLY and FITZGERALD, JJ.

REILLY, J. Defendants appeal as of right from a declaratory judgment. We affirm.

De Bruyn Produce Company is involved in the growing, harvesting, packing, and shipping of vegetables. It has operations in different areas of the country, including Michigan. Defendants are migrant workers from Texas who worked for plaintiff in Ionia, Michigan, during the 1987 season. Defendants were recruited in Texas. Before defendants came to Michigan, the parties executed a number of documents that described the conditions of employment, including housing. Defendants were paid $3.35 an hour and lived in mobile homes provided by plaintiff. Plaintiff required a deposit of $150 for each housing unit to cover the cost of any damage to the unit. Five dollars was to be deducted from each paycheck to cover the deposit.

Defendants Pablo Romero and Gustavo Romero, together with Gustavo's wife and child, lived in a

mobile home that was set aside for a family. Single men, including defendant Jorge Resendez, were housed in separate mobile homes.

After Gustavo's wife and child moved out, Pablo and Gustavo were asked by a representative of plaintiff to move to another mobile home occupied by single men. Another family was expected to arrive and was to be housed in the mobile home formerly occupied by the Romero family. Rather than move to another mobile home, Pablo and Gustavo left the farm and ceased working for plaintiff. Resendez also apparently left because of housing conditions. Gerardo Montes' employment was terminated by plaintiff.

Defendants sought legal counsel, and when the parties could not agree regarding the nature of defendants' rights with respect to the housing provided on the farm, plaintiff brought an action for declaratory judgment in circuit court.[1] Plaintiff sought a declaration of the nature of the legal relationship between plaintiff and defendants with respect to defendants' occupancy of the housing provided by plaintiff and the applicability of the summary proceedings act, MCL 600.5701 *et seq.*; MSA 27A.5701 *et seq.* Additionally, plaintiff asked the court to determine whether the deposit on the mobile home was a security deposit within the meaning of the landlord-tenant relationship act, MCL 554.601 *et seq.*; MSA 26.1138(1) *et seq.* Lastly, plaintiff sought a declaration regarding the applicability of the Michigan Consumer Protection Act, MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.*, and the Truth in Renting Act, MCL 554.631 *et seq.*; MSA 26.1138(31) *et seq.*

[1] Shortly thereafter, defendants filed an action in federal district court, alleging violations of federal and state law. The parties agreed that defendants would withdraw their counterclaims in the state action and instead pursue them in federal court. The federal court proceedings are stayed during the pendency of this case.

The trial court, in its modified opinion, held that the relationship between plaintiff and defendants was regulated by the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 USC 1801 *et seq.*[2] On the basis of the language of the documents executed by the parties, the testimony of the parties, "the controlling federal statute provisions and purposes," and Michigan law, the trial court determined that a landlord-tenant relationship had not existed and that the only legal relationship between the parties was one of employer-employee. The court ruled that because defendants were not tenants, they had no estate at will requiring termination by statutory notice and, therefore, the notice provisions of the summary proceedings act did not apply. In that regard the court also determined that the notice requirement should not be imposed because it would conflict with the purposes of the AWPA, which was intended to benefit employers as well as employees. Finally, the trial court held that the landlord-tenant relationship act, the Michigan Consumer Protection Act, and the Truth in Renting Act were all inapplicable to the employer-employee relationship between plaintiff and defendants. In its declaratory judgment the trial court ruled that the relationship between the parties was that of employer and employee, not landlord and tenant, that the security deposit act, the Truth in Renting Act and the Consumer Protection Act were inapplicable to the parties' relationship, and that it was not mandatory that termination of the defendants' occupancy of plaintiff's licensed employee housing be had pursuant to the summary proceedings act.

---

[2] In its original opinion, the court held that the AWPA preempted and prohibited the application of the state statutes at issue.

I

We first address the applicability of the AWPA to the issues to be resolved in this case. Defendants assert that the trial court misconstrued and misapplied the provisions of the AWPA. The trial court, in finding that the summary proceedings act did not apply in this case, noted that requiring agricultural employers to provide workers with notice to quit would conflict with the purpose underlying the AWPA. The court found that the AWPA was designed to protect agricultural employers as well as migrant workers. Defendants assert that the trial court's interpretation is "a perversion of the statute."

The stated purpose of the AWPA is

to remove the restraints on commerce caused by activities detrimental to migrant and seasonal agricultural workers; to require farm labor contractors to register under this chapter; and to assure necessary protections for migrant and seasonal agricultural workers, agricultural associations, and agricultural employers. [29 USC 1801.]

The AWPA regulates the relationship between migrant workers and agricultural employers and imposes specific duties upon employers. See, e.g., 29 USC 1821-1823. It is clear that the overriding concern of the legislation is to protect migrant workers from exploitation. Although the AWPA serves to regulate the relationship between migrant workers and their employers, it does not occupy the entire field of regulation so as to preempt state regulation. Rather, it "is intended to supplement State law, and compliance with [the statute] shall not excuse any person from compliance with appropriate State law and regulation." 29 USC 1871. Therefore, although we agree with

the trial court that the thirty-day notice require-
ment of § 5714(c)(iii) of the summary proceedings
act is not applicable to these parties, for reasons
stated below we disagree with the trial court's
alternative reasoning that the requirement is inap-
plicable because it conflicts with the purpose of the
AWPA. The issues presented in this case can only
be resolved after consideration of appropriate state
common and statutory law, as well as the AWPA.

II

The underlying issue to be resolved is the nature
of the relationship between plaintiff and defen-
dants with regard to the housing provided by
plaintiff. Defendants argue that the trial court
erred in finding that the relationship was solely
one of employer and employee. They assert that
the documents in the employment packet, when
read together, constitute a lease. We disagree.

This Court's review of declaratory relief is de
novo on the record. However, we will not reverse a
trial court's factual findings unless they are
clearly erroneous. *Kramer v Dearborn Heights,*
197 Mich App 723, 727; 496 NW2d 301 (1993).

A lease is a conveyance by the owner of an
estate of a portion of the interest therein to an-
other for a term less than his own for a valuable
consideration. *Minnis v Newbro-Gallogly Co,* 174
Mich 635, 639; 140 NW 980 (1913). See also *Dep't
of Natural Resources v Westminster Church,* 114
Mich App 99, 104; 318 NW2d 830 (1982). A lease
gives the tenant the possession of the property
leased and the exclusive use or occupation of it for
all purposes not prohibited by the terms of the
lease. *Macke Laundry Service Co v Overgaard,* 173
Mich App 250, 253; 433 NW2d 813 (1988). In order
for an agreement to be a valid lease, it must

contain the names of the parties, an adequate description of the leased premises, the length of the lease term, and the amount of the rent. *Id.* Consideration for a lease may be in services as well as in money. *Westminster Church, supra.* We conclude that the documents relied on by defendants do not constitute a lease or create a landlord-tenant relationship between the parties.

The document entitled "Worker Information Sheet" was provided to defendants in an effort to comply with the disclosure provisions of the AWPA, 29 USC 1821(a).[3] It included a section that stated:

> HOUSING: (For migrant workers who will be housed, the kind of housing available and cost, if any) Type: *Mobile Home* Charges: *Deposit* Other: *Available only to those offered housing agreements and are currently employed by De Bruyn Produce Co. Tenantcy [sic] is week to week.*

The document evidenced that defendants were

---

[3] Each farm labor contractor, agricultural employer, and agricultural association which recruits any migrant agricultural worker shall ascertain and disclose in writing to each such worker who is recruited for employment the following information at the time of the worker's recruitment:

(1) the place of employment;

(2) the wage rates to be paid;

(3) the crops and kinds of activities on which the worker may be employed;

(4) the period of employment;

(5) *the transportation, housing, and any other employee benefit to be provided, if any, and any cost to be charged for each of them;*

(6) the existence of any strike or other concerted work stoppage, slowdown, or interruption of operations by employees at the place of employment; and

(7) the existence of any arrangements with any owner or agent of any establishment in the area of employment under which the farm labor contractor, the agricultural employer, or the agricultural association is to receive a commission or any other benefit resulting from any sales by such establishment to the workers. [29 USC 1821(a). Emphasis added.]

informed, in compliance with the AWPA, of the housing situation.

Another document entitled "Housing Units" described conditions for use of the housing units and stated in pertinent part:

> 1. To be occupied by De Bruyn Produce Company employees, and their immediate family only.
> 2. "Housing Units" tenantcy [sic] is strictly on a week-to-week basis.
> 3. Upon termination of employment, the housing unit is expected to be vacated within 2 days.

This document was also supplied to defendants in conformance with 29 USC 1821(c). We agree with the trial court's interpretation of the language that housing is "[t]o be occupied by De Bruyn Produce Company employees, and their immediate family only" as meaning that employment is required as a condition of housing and occupancy is limited to an employees' immediate family, not that the workers are given exclusive possession and control of the premises, as asserted by defendants. Moreover, we agree with the trial court that the language "tenantcy [sic] is on a week-to-week basis," when read in context, refers to occupancy of the housing unit and does not serve to create a lease.[4]

Also included in the package was a document explaining the company's policy regarding the $150 deposit for housing and authorizing the company to deduct $5 each pay period to cover the deposit. There was also a list entitled "Occupants Responsibilities."

[4] Although an ambiguous document must be construed against the drafter of the document, the court is not bound to accept the interpretation offered by the nondrafting party. *Sprick v Regents of Univ of Mich,* 43 Mich App 178, 186; 204 NW2d 62 (1972), aff'd 390 Mich 84; 210 NW2d 332 (1973).

In spite of the use of the word "tenantcy," it is clear from the language of these documents, when read in context, that there was no landlord-tenant relationship created and that housing was contingent upon the employer-employee relationship. None of these documents contain language evidencing an intent to form a landlord-tenant relationship. There is no provision regarding conveyance for consideration or monetary rent, nor is there any provision indicating an agreement that defendants' services were to be considered as rent. There is no language conveying a possessory interest in specific, designated property, or providing for defendants' exclusive use and possession of any property. Additionally, it is undisputed that workers who were not provided housing made the same wage as those who were provided with housing. We believe these facts defeat defendants' argument that their services were intended as rent.

The situation presented in this case is distinguishable from that in *Grant v Detroit Ass'n of Women's Clubs,* 443 Mich 596; 505 NW2d 254 (1993). In *Grant,* the use and occupancy of an apartment by the plaintiff was provided pursuant to an employment contract in exchange for the plaintiff's services as a full-time caretaker. *Id.* at 599. The plaintiff's occupancy in that case was not a marginal consequence of employment. Rather, according to the terms of the employment contract, the plaintiff's occupancy was the "sole and full compensation" for the plaintiff's services. *Id.* at 601. In the present case, however, there was no agreement between the parties that defendants' occupancy of the mobile homes would be compensation for their services. Defendants were paid a wage that was the same as that paid to other workers who were not provided with housing.

We are convinced that the documents in the

employment package do not constitute a lease agreement separate and distinct from the parties' employment contract. Thus, defendants' right to occupy the premises owned by plaintiff was dependent on the continuation of the employment relationship with plaintiff and not on any separate rights of tenancy. See *School Dist No 11 v Batsche,* 106 Mich 330, 333; 64 NW 196 (1895); *Lane v Au Sable Electric Co,* 181 Mich 26, 31; 147 NW 546 (1914).[5] See also *Vasquez v Glassboro Service Ass'n, Inc,* 83 NJ 86; 415 A2d 1156 (1980), where the court, in addressing the right of a farm worker to remain on an employer's property after the employment had ended, found that the special characteristics of migrant workers' housing, the absence of a contractual provision for the payment of rent, the lack of privacy, the intermittent occupancy, and the interdependence of employment and housing supported the determination that the migrant worker in that case was not a tenant.

We are cognizant of the holding in *Folgueras v Hassle,* 331 F Supp 615 (WD Mich, 1971), where the court described migrant farm workers as tenants in reaching its conclusion that farm workers have a right to information and services from third parties and that the landowner could not prevent certain parties from gaining access to the workers. However, we disagree with defendants' assertion that the court's ruling in *Folgueras* regarding the existence of a tenant relationship, which was made without reference to applicable Michigan law, is controlling in this case.[6]

---

[5] Defendants acknowledge that, except for instances where their employment is illegally terminated, their right to possession ends when the employment relationship ends.

[6] We are not confronted here with the access issue as was the court in *Folgueras.* Our rejection of the court's reasoning and finding that the migrant workers were tenants does not mean that we disagree with the court's ultimate conclusion with regard to the issue of access.

Although the Supreme Court in *Grant* cited *Folgueras* as instructive and as an example of "the importance of examining whether the essential characteristics of a landlord-tenant relationship are present," *Grant, supra* at 604, the Court in *Grant* was not confronted with and did not address the unique issues presented in this case. Nor did it specifically approve of the holding in *Folgueras.* Therefore, we do not believe the *Grant* Court's comments compel us to follow *Folgueras.*

### III

The determination that defendants' occupancy was not based upon a landlord-tenant relationship does not mean that defendants could have been summarily removed from the premises at any time. Plaintiff correctly acknowledges that it is prevented from exercising "self-help" in order to regain possession of the property and that it must resort to judicial process. See MCL 600.2918(1); MSA 27A.2918(1);[7] *Deroshia v Union Terminal Piers,* 151 Mich App 715; 391 NW2d 458 (1986). However, plaintiff argues that the procedure set forth in the summary proceedings act, MCL 600.5701 *et seq.*; MSA 27A.5701 *et seq.*, is not the only statutory method available to recover possession of the premises. Further, plaintiff contends that it is not required to comply with the notice

Rather, we conclude that the better-reasoned approach to the issue of access is the approach espoused in *New Jersey v Stack,* 58 NJ 297; 277 A2d 369 (1971), and relied on as an alternative rationale by the *Folgueras* court.

[7] The statute provides in pertinent part:

Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession. [MCL 600.2918(1); MSA 27A.2918(1).]

requirements provided in MCL 554.134; MSA 26.1104.[8]

To facilitate resort to judicial process, the summary proceedings act provides a procedure in district and municipal courts for the recovery of possession of realty in an expeditious manner. See MCL 600.5735; MSA 27A.5735. Pursuant to MCL 600.5714(1); MSA 27A.5714(1), a person entitled to certain premises may seek to recover possession through summary proceedings in the following cases:

(a) When a person holds over premises, after failing or refusing to pay rent . . . .

(b) When a person holds over premises for 7 days following service of a written demand for possession for termination of the lease pursuant to a clause in the lease providing for termination because a tenant, a member of the tenant's household, or other person under the tenant's control has unlawfully manufactured, delivered, possessed with intent to deliver, or possessed a controlled substance on the leased premises . . . .

(c) When a person holds over premises in 1 or more of the following circumstances:

(i) After termination of the lease, pursuant to a power to terminate provided in the lease or implied by law.

(ii) After the term for which the premises are demised to the person under whom he or she holds.

(iii) After the termination of the person's estate

---

[8] MCL 554.134(1); MSA 26.1104(1) provides, in pertinent part:

Except as provided otherwise in this section, an estate at will or by sufferance may be terminated by either party by 1 month's notice given to the other party. If the rent reserved in the lease is payable at periods of less than 3 months, the time of notice is sufficient if it is equal to the interval between the times of payment.

by a notice to quit as provided by . . . section 554.134 of the Michigan Compiled Laws.

(d) When the person in possession willfully or negligently causes a serious and continuing health hazard to exist on the premises, or causes extensive and continuing physical injury to the premises . . . .

(e) When a person takes possession of premises by means of a forcible entry, holds possession of premises by force after a peaceable entry, or comes into possession of premises by trespass without color of title or other possessory interest.

(f) When a person continues in possession of premises sold by virtue of a mortgage or execution, after the time limited by law for redemption of the premises.

(g) When a person continues in possession of premises sold and conveyed by a personal representative under license from the probate court or under authority in the will.

Except for subsection 1(e), none of the above-cited provisions address the unique situation presented in this case where an employee occupies property with the consent of his employer. As we have already determined, defendants did not have possession of the housing units pursuant to a lease agreement. Further, the provisions regarding the failure to pay rent do not apply.

Additionally, as noted by the trial court, there is nothing to indicate that defendants were tenants at will or at sufferance who should be evicted through summary proceedings under subsection 1(c)(iii). An employee who continues to occupy housing provided by an employer after the termination of the employment relationship may be considered to be a tenant by sufferance if the employer allows him to remain in possession for a sufficient period to imply acquiescence in the occu-

pancy.[9] *Batsche, supra;* See also *Felt v Methodist Educational Advance,* 251 Mich 512; 232 NW 178 (1930). Further, if the employee remains on the property pursuant to the express consent of the employer, he may become a tenant at will. *Batsche, supra.* However, there were no facts before the trial court indicating either consent or laches on the part of plaintiff. In fact, plaintiff, in requesting a declaratory judgment, is seeking to determine which judicial remedies are applicable so that it may properly act and avoid creating a tenancy at will or at sufferance. Accordingly, we conclude that the provisions of MCL 600.5714(1)(c)(iii); MSA 27A.5714(1)(c)(iii) and the notice provisions of MCL 554.134; MSA 26.1104 referred to therein are also not applicable in this case.

Although plaintiff has not specifically addressed the distinction between a refusal by its migrant workers to move to different living quarters during the period of employment when ordered by the employer and a refusal to leave living quarters after employment has terminated, we believe either situation may be resolved under subsection 1(e). Under either situation, the refusal to leave peaceably, thus requiring removal by force, constitutes a holding by force, and the plaintiff is entitled to recover possession by summary proceedings under subsection 1(e). See *Prestage v Hanley,* 259 Mich 97; 242 NW 851 (1932).

IV

The next question is whether the summary proceedings act is the only judicial process available to plaintiff in seeking to dispossess defendants. We conclude that it is not.

---

[9] The question then becomes what period of time is sufficient to establish laches on the part of the landowner. See Tiffany, Real Property (3d ed), § 174, p 281.

Pursuant to § 5750 of the act, the remedy provided by summary proceedings "is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory." MCL 600.5750; MSA 27A.5750.[10] We disagree with defendants' assertion that the case of *Deroshia, supra,* mandates a finding that summary proceedings are a property owner's exclusive remedy in a situation like the one presented in this case. In *Deroshia,* the Court, in addressing the limited issue whether a landlord could resort to self-help to regain possession from a holdover tenant, stated that the landlord's entitlement to repossession and damages in summary proceedings "provide[s] a complete answer to the landlord who seeks to remove a tenant in possession." *Id.* at 719-720. However, the Court was not considering a situation where repossession and monetary damages is not an adequate remedy. Moreover, the Court noted that pursuant to § 5750, summary proceedings are not exclusive of other remedies. *Id.* at 721. Thus, we conclude that pursuant to § 5750 the plaintiff is not precluded from seeking other forms of relief, such as statutory and common-law equitable relief, including an injunction.[11]

---

[10] We note also that § 5714, the provision that sets forth the grounds for recovery of possession through summary proceedings, states that "a person entitled to any premises *may* recover possession thereof by summary proceedings." MCL 600.5714; MSA 27A.5714. [Emphasis added.]

[11] The factors to be considered before a preliminary injunction may be issued are: (1) the likelihood that the party seeking the injunction will prevail on the merits; (2) the danger that the party seeking the injunction will suffer irreparable injury if the injunction is not issued; (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief; and (4) the harm to the public interest if the injunction is issued. *Campau v McMath,* 185 Mich App 724, 728-729; 463 NW2d 186 (1990). An additional consideration is whether an adequate legal remedy is available. *Michigan State Employees Ass'n v Dep't of Mental Health,* 421 Mich 152, 158; 365 NW2d 93 (1984).

v

The next issue presented is whether the trial court erred in determining that the provisions of the landlord tenant relationship act (LTRA), MCL 554.601 *et seq.*; MSA 26.1138(1) *et seq.*, did not apply under the circumstances of this case.

The LTRA serves to regulate relationships between landlords and tenants relative to rental agreements and the payment, repayment, and use of security deposits. The act is intended to protect tenants, especially from the situation where a landlord "surreptitiously usurp[s] substantial sums held to secure the performance of conditions under the lease." *Oak Park Village v Gorton,* 128 Mich App 671, 680; 341 NW2d 788 (1983). For the purposes of the LTRA, a tenant is defined as "any person who occupies a rental unit for residential purposes with the landlord's consent for an agreed upon consideration." MCL 554.601(d); MSA 26.1138(1)(d). We agree with the trial court that defendants are not tenants within the meaning of the LTRA.

Although defendants occupied the housing units with plaintiff's consent, the occupancy was not based on "an agreed upon consideration." Defendants did not pay rent. Furthermore, the documents executed by the parties and the situation surrounding defendants' occupancy do not support a finding that defendants' travel from Texas or availability for work operated as "agreed upon consideration." The fact that defendants were paid the same wage as workers who were not provided housing indicates that defendants' services were not intended as consideration for the housing. Lastly, the language of the statute itself implies that "agreed upon consideration" means a monetary payment of rent. See MCL 554.602; MSA

26.1138(2) (a security deposit shall not exceed 1½ months' rent).

VI

Defendants also assert that the trial court erred in determining that the Truth in Renting Act, MCL 554.631 *et seq.*; MSA 26.1138(31) *et seq.*, was not applicable in this case.

The Truth in Renting Act regulates rental agreements for residential* premises. The term "rental agreement" as used in the act is defined as

> a written agreement embodying the terms and conditions concerning the use and occupancy of residential premises, but does not include an agreement the terms of which are limited to 1 or more of the following: the identity of the parties, a description of the premises, the rental period, the total rental amount due, the amount of rental payments, and the times at which payments are due. [MCL 554.632(a); MSA 26.1138(32)(a).]

We agree with defendants that the trial court misstated the definition of rental agreement as provided in the Truth in Renting Act. Nevertheless, we agree with the trial court that the act has no application to the present case.

The documents in the employment packet do not establish a "written *agreement* embodying the terms and conditions concerning the use and occupancy" of the housing units. Rather, the documents were informational, providing defendants with information regarding the terms and conditions of their occupancy as required by § 1821 of the AWPA. We do not believe that these documents come within the scope of the Truth in Renting Act.

VII

Lastly, defendants argue that the trial court erroneously found that the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.*, was not relevant to the relationship between the parties. We disagree.

The MCPA prohibits certain unconscionable, deceptive or unfair acts, practices, or methods in the conduct of trade or commerce. *Smolen v Dahlmann Apartments, Ltd,* 127 Mich App 108, 117; 338 NW2d 892 (1983). The act defines "trade or commerce" to include the rental of real property. MCL 445.902(d); MSA 19.418(2)(d).

We do not believe that the conduct of plaintiff involved in this case, i.e., the providing of housing to defendant farm workers, falls within the definition of "trade and commerce" as utilized in the MCPA. As we have already determined, defendants did not occupy the housing units pursuant to a lease agreement with plaintiff. Nor did they pay rent. Rather the use of the housing units was provided as a benefit of employment. We find that the situation in this case is distinguishable from that in *Rodriguez v Berrybrook Farms, Inc,* 672 F Supp 1009 (WD Mich, 1987). In *Rodriguez,* the court found that where "labor camp owners charge a monetary fee for housing, *a fortiori,* they fall within the clear language of section 445.902(d)." *Id.* at 1021. In the present case, defendants were not charged for the occupancy of the housing units.

Affirmed.