*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

16 HOLDINGS LLC,

        Plaintiff-Appellee,

v

KISA ENTERPRISES MI, INC.,

        Defendant-Appellant,

and

CHICAGO ATLANTIC ADMIN, LLC,

        Intervenor-Appellee.

UNPUBLISHED
October 24, 2025
1:49 PM

No. 369754
Oakland Circuit Court
LC No. 2022-194390-CB

Before: REDFORD, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right a judgment entered in favor of plaintiff in the amount of $6,747,200 on plaintiff's breach-of-contract claim. For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for reduction of the monetary award to present cash value.[1]

## I. OVERVIEW OF CASE AT TRIAL COURT

This case arises out of a breach of the parties' lease agreement. Plaintiff owned a 45,000 square foot building at 300 Hammontree in Morenci, Michigan, which it had previously purchased from defendant. Defendant owned several cannabis retail stores and was looking to grow its business by partnering with a larger company engaged in a cultivation operation. To further this

---

[1] This Court dismissed Chicago Atlantic Admin, LLC, from this appeal upon stipulation of the parties. *16 Holdings LLC v KISA Enterprises MI Inc*, unpublished order of the Court of Appeals, entered October 21, 2024 (Docket No. 369754).

expansion, Dr. Mark Silver, defendant's chief executive officer, began negotiating with MariMed, Inc. Through the partnership or joint venture, MariMed would benefit from defendant's cannabis license to enter the Michigan cannabis market. Dr. Silver testified that, in order to qualify for a local permit, a business must have a lease or own a building locally. To further the negotiations with MariMed and other companies, Dr. Silver signed a 10-year lease with plaintiff for the property that defendant had previously owned. However, Dr. Silver testified that he believed that he was only signing the lease for the purpose of engaging in further discussions about a potential business opportunity. Plaintiff and defendant incorporated a 30-day cancellation provision in the agreement as defendant's negotiations with other companies were ongoing. As negotiations progressed with MariMed, Dr. Silver became ill, was hospitalized, and diagnosed with cancer. Defendant missed an extended 30-day cancellation deadline, breached the lease agreement, and plaintiff ultimately initiated this action for breach of contract. The dispute proceeded to a bench trial, resulting in the judgment in plaintiff's favor of $6,747,200 indicated above.

## II. ANALYSIS

## A. BREACH OF CONTRACT

Defendant argues that the parties did not have a valid contract because there was no meeting of the minds on all the essential terms of the proposed lease agreement. We disagree.

This Court reviews a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo. *Astemborski v Manetta*, 341 Mich App 190, 195-196; 988 NW2d 857 (2022). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made. This Court is especially deferential to the trial court's superior ability to judge of the relative credibility of witnesses[.]" *Id*. at 195 (quotation marks and citation omitted).

"The goal of contract construction is to determine and enforce the parties' intent on the basis of the plain language of the contract itself. If the contract language is clear and unambiguous, its meaning presents a question of law." *American Federation of State, Co and Muni Employees v Detroit*, 267 Mich App 255, 262; 704 NW2d 712 (2005) (quotation marks and citations omitted). "[I]f the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

"The party seeking to enforce a contract bears the burden of proving that the contract exists." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id*. "A valid contract requires mutual assent on all essential terms." *Eerdmans v Maki*, 226 Mich App 360, 364; 573 NW2d 329 (1997). Mutuality of agreement is evidenced by a meeting of the minds on all the essential terms. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 454; 733 NW2d 766 (2006). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. (quotation marks and citation omitted). The essential terms of a valid lease are "the names of the parties, an adequate description of the leased premises, the length of the lease term, and the amount of the rent." *De Bruyn Produce Co v Romero*, 202 Mich App 92, 98-99; 508 NW2d 150 (1993).

Defendant first argues that the trial court failed to analyze and make a finding that the lease agreement was a valid contract. However, the trial court stated, "[T]here is no question that the Lease Agreement was a contract . . . ."

The first paragraph of the lease agreement provides:

> THIS LEASE AGREEMENT (the "Lease") is made and entered into as of July 9, 2021 ("Effective Date"), by and between 16 Holdings, LLC, a limited liability company whose address is 520 Hammontree Drive, Morenci, Michigan 49256 ("Landlord") and KISA Enterprises MI, LLC, a Michigan Limited Liability Company, whose address is 1221 Bowers Street, #161, Birmingham, MI 48012("Tenant").

The lease provided for a term of 10 years, commencing on July 9, 2021, and expiring on November 8, 2031. The parties agreed to monthly rent of $52,500 per month.

The lease agreement contained the name of the parties, the length of the lease term, and the amount of rent for the leasehold. While the lease agreement did list the wrong address, a photo attached to the lease agreement depicted the correct property and the parties did not dispute that the lease was for the property at 300 Hammontree. Thus, the agreement contained all the essential terms of a valid lease. *Id*. Considering the express words of the parties, the parties did agree to the essential terms for a lease. Moreover, the parties expressed their agreement by signing the lease.

Despite this, defendant raises several arguments to assert there was no meeting of the minds on the essential terms of the lease. Defendant first argues that there was no meeting of the minds because defendant could not move forward with the lease unless it partnered with a larger company that had a cultivation operation. However, the trial court was not required to understand the minds of the parties. *Kloian*, 273 Mich App at 454. Rather, the trial court was required to look at the words the parties expressed in the agreement and their actions. *Id*. Nothing in the lease indicates that its enforceability was contingent on defendant first entering a partnership or joint venture.

Defendant also argues that there was no meeting of the minds because the lease was a "placeholder" lease and the guarantor signature line was left blank. In its motions in the trial court and its brief on appeal, defendant calls the lease a "placeholder" or a "draft" lease. However, the lease agreement that the parties signed did not expressly state that it was an unenforceable draft or placeholder. Additionally, the lease agreement did not contain any language requiring a guarantor. In fact, the only reference to a guarantor anywhere in the lease is the inclusion of the signature line for a guarantor "to be mutually agreed upon," which appears below the parties' signatures. In Article XI, titled Assignment and Subletting, the lease provides that the tenant shall not assign or transfer the lease, sublet the premises, or allow anyone other than the tenant to occupy the premises without prior written approval by the landlord. Neither party submitted any evidence of plaintiff's prior written approval of another entity occupying the property.

Pursuant to MCL 566.108, a lease for a term exceeding one year requires a signature of the "party by whom the lease or sale is to be made." The only signature required to survive a challenge under the statute of frauds was plaintiff's as the lessor or landlord. Therefore, defendant's

argument that the lease was not valid or enforceable because it was not signed by the guarantor is without merit. Considering the express words and visible actions of the parties, there was a meeting of the minds and a valid lease agreement signed by both parties. Consequently, the trial court did not err by finding that the lease agreement was valid, binding, and enforceable.

## B. AFFIRMATIVE DEFENSES

Defendant argues that the trial court erred by denying his motion for a new trial because the trial court found that defendant waived the equitable defenses of unconscionability and equitable estoppel. We disagree.

This Court reviews a trial court's denial of a motion for a new trial for an abuse of discretion. *Taylor v Kent Radiology*, 286 Mich App 490, 525; 780 NW2d 900 (2009). An abuse of discretion occurs when a trial court's decision is outside the range of reasonable and principled outcomes. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016).

"Contracts are generally enforced as written, unless there is a defense or other reason not to enforce the contract." *Rayford v American House Roseville I, LLC*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 163989); slip op at 8 (quotation marks and citation omitted). "Equitable defenses to contracts have developed over time in recognition of flaws that can occur in the process of contract formation. These defenses include unconscionability, duress, fraud, waiver, estoppel, and violations of public policy." *Id*.

The defenses of unconscionability and estoppel are both affirmative defenses that defendant waived by failing to plead them. As previously explained by this Court:

> An affirmative defense is a defense that does not controvert the plaintiff's establishing a prima facie case, but that otherwise denies relief to the plaintiff. In other words, it is a matter that accepts the plaintiff's allegation as true and even admits the establishment of the plaintiff's prima facie case, but that denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings. [*Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993).]

Defendant argues that even if it breached the contract and canceled the contract after the cancellation window had expired, the trial court should not enforce the contract or order defendant to pay plaintiff damages because to do so would cause unconscionable harm to defendant. Additionally, defendant argues that plaintiff was estopped from enforcing the lease because it agreed to extend the cancellation period and gave defendant every indication that it would not enforce the cancellation deadline. Both defenses accept plaintiff's breach-of-contract claim as true, but deny that plaintiff is entitled to enforce the contract or to recover damages for reasons unrelated to whether plaintiff could establish its claim. Therefore, defendant's defenses of unconscionable harm and equitable estoppel are affirmative defenses. See *id*.

"Affirmative defenses are not 'pleadings' under the court rules." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 230; 964 NW2d 809 (2020). However, this Court has concluded that affirmative defenses "are highly analogous to pleadings, and . . . serve essentially the same

-4-

functional purpose." *Id*. MCR 2.111(F)(3) requires that a party file its affirmative defenses in a responsive pleading as originally filed or as amended pursuant to MCR 2.118. A party that fails to raise an affirmative defense as required by MCR 2.111(F) waives the defense. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 753; 880 NW2d 280 (2015); see also MCR 2.111(F)(2).

MCR 2.118(A)(2) provides: "Except as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." Although MCR 2.118(A)(2) provides for an amendment of the pleading by leave granted, defendant did not move to amend its affirmative defenses. Rather, defendant introduced the defense of unconscionability in its trial brief. Defendant first raised an explicit argument that estoppel precluded enforcement of the cancellation deadline in its motion to amend or alter the judgment. Defendant argued that plaintiff's failure to claim that the cancellation deadline would be enforced led defendant to believe that it did not have to inform plaintiff of cancellation on a certain date. Because defendant failed to properly raise these issues in the lower court, defendant waived these defenses.

On appeal, defendant does not directly address the trial court's finding that defendant waived its affirmative defenses by failing to properly plead them or move for an amendment of the pleadings. Defendant argues that plaintiff consented to litigate the issue of unconscionability because it did not object to defendant's inclusion of the issue in its trial brief.[2] Defendant asserts that MCR 2.118(C)(1) therefore allows its defense of unconscionability to be treated as if defendant had properly raised it in its pleadings. MCR 2.118(C)(1) provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings. In that case, amendment of the pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment.

In its trial brief, defendant cited an unpublished case to argue that unconscionable harm would result from plaintiff's refusal to accept defendant's cancellation. In its opening statement, defendant argued that plaintiff's damage request was unconscionable and unduly speculative. During closing argument, defendant argued that plaintiff's request of $6.3 million was "an unconscionable and (inaudible) cash grab." Defendant's statements and arguments were not enough to put plaintiff on notice of an unconscionability defense to which plaintiff could consent. In any event, defendant did not file a motion in the lower court at any time to amend its pleadings. Therefore, defendant waived the affirmative defenses of equitable estoppel and unconscionability and the trial court properly denied its motion for a new trial.

---

[2] Defendant did not include the defense of equitable estoppel in its argument that plaintiff consented to litigate the issue. Defendant merely advances application of equitable estoppel as a defense without addressing the trial court's procedural ruling.

## C. REMITTITUR OR NEW TRIAL

Defendant argues that the trial court erred by awarding plaintiff excessive and inequitable damages and failed to reduce the monetary award to its present cash value. We disagree in part and agree in part.

This Court reviews a trial court's decision on a motion for a new trial and remittitur for an abuse of discretion. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 761; 685 NW2d 391 (2004); *Shaw v Ecorse*, 283 Mich App 1, 17; 770 NW2d 31 (2009).

Defendant's sole argument for a new trial is that the monetary award was excessive and remittitur was warranted. MCR 2.611(E)(1) provides:

> If the court finds that the only error in the trial is the inadequacy or excessiveness of the verdict, it may deny a motion for new trial on condition that within 14 days the nonmoving party consent in writing to the entry of judgment in an amount found by the court to be the lowest (if the verdict was inadequate) or highest (if the verdict was excessive) amount the evidence will support.

"In determining whether remittitur is appropriate, the proper consideration is whether the jury award was supported by the evidence." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 546; 854 NW2d 152 (2014). The trial court must base its determination on objective criteria in regards to the evidence presented. *Id*. A reviewing court should consider

> (1) whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact; (2) whether the verdict was within the limits of what reasonable minds would deem just compensation for the injury sustained; and (3) whether the amount actually awarded is comparable to awards in similar cases within the state and in other jurisdictions. [*Id*. at 547 (quotation marks and citation omitted).]

The award should not be disturbed if the awards fall within the range of the evidence. *Id*.

"The appropriate measure of damages for breach of a contract, such as a lease, is that which would place the injured party in as good a position as it would have been in had the promised performance been rendered." *Jim-Bob, Inc v Mehling*, 178 Mich App 71, 98; 443 NW2d 451 (1989).[3] "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 550; 904 NW2d 192 (2017). A plaintiff should "take reasonable actions to minimize the extent of

---

[3] Although MCR 7.215(J)(1) only *requires* this Court to follow the rule of law established by a decision of this Court issued on or after November 1, 1990, this Court "traditionally regards [older opinions] as retaining some authority, at least if they were not disputed by some other contemporaneous case." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018).

damages arising from the wrongful breach of a contract." *M & V Barocas v THC, Inc*, 216 Mich App 447, 449; 549 NW2d 86 (1996).

> Mitigation of damages is a legal doctrine that seeks to minimize the economic harm arising from wrongdoing. Specifically, when one has committed a legal wrong against another, the latter has an obligation to use reasonable means under the circumstances to avoid or minimize his or her damages and cannot recover for damages that could thus have been avoided. [*Landin*, 305 Mich App at 538.]

Although a plaintiff has a duty to mitigate damages, the defendant bears the burden of proof on that issue. *Id*. at 539.

The parties' lease contained an acceleration clause. This Court explained in *Sparta State Bank v Covell*, 197 Mich App 584, 587; 495 NW2d 817 (1992), that "[i]n the absence of an acceleration clause, claims on an installment contract do not accrue until the installment becomes due." Thus, an acceleration clause, like the one in the parties' lease agreement, dictates that payments are due immediately. The acceleration clause does not abrogate a party's duty to mitigate damages.

Plaintiff presented witnesses in support of its attempts to mitigate damages. Wendy Acho testified that she entered into an agreement with Christian Mills, plaintiff's majority owner, for an exclusive right to sell or lease the property. The listing agreement was for the time period between April 30, 2021 and November 30, 2021. Acho explained that it was a period of time at the top of the cannabis market, and she received a significant amount of interest. This listing was Acho's first cannabis property. Acho testified that she had been inundated with requests suitable for the cannabis trade. Plaintiff determined the pricing. Acho informed plaintiff that the market would determine if the property was priced properly.

Justin Yurgens, a minority owner of plaintiff, testified that he signed a commercial property listing agreement with Andrianna Grillowith, an agent with RE/MAX Eclipse. The listing agreement extended from November 30, 2021 to May 30, 2022. Yurgens testified that he did not receive any valid offers. Yurgens admitted that plaintiff had received a $2 million offer on the property, but Yurgens explained that the offer had so many caveats that he did not believe that it was legitimate. Plaintiff counteroffered, but there was no response.

Larry Balone testified that he entered into an exclusive broker agreement with plaintiff for the property on March 7, 2022. Balone received feedback from potential buyers that plaintiff's pricing was higher than market. Those concerns were addressed with price reductions over 12 months. The price was reduced from $3,495,000 to $2,495,000. For a lease, the price was reduced from $12 per square foot to $5 per square foot. Balone testified that the building needed improvements, such as a floor, routing for major utilities, and a build out. Balone would not have accepted the listing for $4.95 million because of the market conditions. Balone did not receive any offers. The pricing market fell off within a few weeks after March 2022. The majority of the feedback Balone received concerned the condition of the building. Buyers were interested in a building in which they could open a business sooner.

"The question whether plaintiff's efforts to mitigate damages were reasonable under the circumstances is one for the trier of fact." *Morris v Clawson Tank Co*, 459 Mich 256, 270; 587 NW2d 253 (1998). The trial court observed in its findings of fact that plaintiff had hired three real estate agents to list the property for sale or lease from April 30, 2021 through May 30, 2022 without receiving any good-faith offers. The trial court found that plaintiff's attempts to find a buyer or another tenant for the property were "all good faith, robust, and vigorous attempts to obtain a reasonable price in the market 16 Holdings was now facing." The trial court also found that the market conditions of cannabis specific properties had "deteriorated terribly." The trial court found that plaintiff lost $6,300,000 in rent and that defendant owed $312,000 for contractual late fees and $135,200 for contractual interest. The trial court found that plaintiff made reasonable efforts to mitigate its damages, but that the cannabis market had changed considerably between the execution of the lease and plaintiff's attempts to sell or lease the property after the default.

On appeal, defendant argues that plaintiff did not make reasonable attempts at mitigation because it refused an offer and it listed the properly at an inflated price. Yurgens explained his reasoning behind rejecting the $2 million dollar offer. Yurgens did not believe that the offer was legitimate because the buyer requested numerous exceptions. Yurgens also testified that he counteroffered, but did not receive a response. The testimony also established that plaintiff greatly reduced the price as the market worsened. Moreover, Balone testified that after March 2022, the market plummeted. Considering that plaintiff immediately listed the property, hired several different real estate agents, and lowered the price several times, the trial court did not err by finding that plaintiff made reasonable attempts to mitigate damages.

Because the measure of damages for a breach of a lease "is that which would place the injured party in as good a position as it would have been in had the promised performance been rendered," the trial court's award of damages was reasonable. *Jim-Bob, Inc*, 178 Mich App at 98. The award put plaintiff in as good a position as if defendant had performed under the lease. In light of plaintiff's reasonable attempts at mitigation and the fall of the cannabis market in the following six months, plaintiff's damages were "the direct, natural, and proximate result of the breach." *Van Buren Charter Twp*, 319 Mich App at 550 (quotation marks and citation omitted). Defendant signed the lease agreement, and the trial court found that the lease was valid. Defendant argues that plaintiff requested an inflated price for the property. However, the parties had equal bargaining power. In fact, Erich Eisenegger, defendant's general counsel, expressed regret that Mills had not been represented by an attorney during the negotiations. Considering the terms and conditions of the lease and defendant's execution of it, we find that plaintiff's damages were the direct result of defendant's breach and we affirm the trial court's order denying a new trial.

Defendant also argues that the trial court erred by failing to reduce the damages awarded under the acceleration clause to its present cash value. We agree.

"Michigan law clearly requires that damages for future losses be reduced to present value." *Freeman v Lanning Corp*, 61 Mich App 527, 529; 233 NW2d 68 (1975), overruled in part on other grounds by *Goins v Ford Motor Co*, 131 Mich App 185; 347 NW2d 184 (1983). A reduction to present value is necessary because "[t]o grant recovery in the full amount of future damages in effect overcompensates a plaintiff by the amount of interest which the money earns." *Id*. Because the parties did not address the calculation of present cash value in the trial court, we reverse the trial court's order denying remittitur and remand for further consideration of present cash value.

-8-

## D.  REMAND TO A NEW JUDGE

Defendant requests that this Court order the case to be reassigned to a new judge upon remand.  We disagree that reassignment is warranted.

Under MCR 7.216(A)(7), this Court has discretion to " 'enter any judgment or grant further or different relief as the case may require.' " *Citizens Protecting Mich Constitution v Secretary of State*, 280 Mich App 273, 284; 761 NW2d 210 (2008).  "The general concern when deciding whether to remand to a different trial judge is whether the appearance of justice will be better served if another judge presides over the case." *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004).  This Court "may remand to a different judge if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment will not entail excessive waste or duplication." *Id*. at 602-603.

Defendant's arguments in support of remand to a new judge concern the trial court's findings that defendant's witnesses were not credible, a few stray remarks in its opinions, and sanctions that defendant claims were unwarranted.[4]  However, "repeated rulings against a litigant, no matter how erroneous, and how vigorously and consistently expressed, are not disqualifying." *Wayne Co Prosecutor v Parole Bd*, 210 Mich App 148, 155; 532 NW2d 899 (1995) (quotation marks and citation omitted).  There is nothing in the record to establish that the trial judge would have difficulty putting aside his previous findings or that reassignment is necessary to preserve the appearance of justice.  We deny defendant's request for a different judge on remand.

## III.  CONCLUSION

For the reasons set forth above, we affirm in part, reverse in part, and remand for further consideration of present cash value.  We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Sima G. Patel

---

[4] Although defendant posits that the trial court erroneously sanctioned defendant, it has not challenged the sanctions as a claim of error in this appeal.